## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY BARASKY, | No. 4:21-CV-02041 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| KEVIN DENT, TYSON HAVENS, JOSHUA BELL, CLINTON GARDNER, CHRISTOPHER KRINER, JOSEPH HOPE, LYCOMING COUNTY, OLD LYCOMING TOWNSHIP, and CITY OF WILLIAMSPORT | |
| Defendants. | |

## MEMORANDUM OPINION

### OCTOBER 25, 2022

Plaintiff Anthony Barasky has sued two detectives, three police officers, one police chief, and three municipalities for their alleged conduct that resulted in Barasky suffering a 229-day incarceration that he should never had been forced to serve. The First Amended Complaint's claims are far-reaching and, for the most part and as to most of the Defendants, do not sufficiently plead facts upon which relief can be granted. However, certain counts against Defendant Kevin Dent, the detective alleged to have directed and participated in the unlawful arrest, search, seizure, prosecution, and detention of Barasky, satisfy the pleading standard and survive Dent's Motion to Dismiss.

## I.    BACKGROUND

Barasky's allegations revolve around the actions taken by various members of the Narcotics Enforcement Unit spearheaded by the Lycoming County District Attorney's Office.[1] These members included the following named Defendants: (i) Detective Kevin Dent (employed by Lycoming County); (ii) Detective Tyson Havens (employed by Lycoming County); (iii) police officer Joshua Bell (employed by the City of Williamsport); police officer Clinton Gardner (employed by the City of Williamsport); (iv) police officer Christopher Kriner (employed by Old Lycoming Township); and (v) police chief Joseph Hope (employed by Old Lycoming Township).[2] The municipalities themselves of Lycoming County, the City of Williamsport, and Old Lycoming Township (the "Municipal Defendants") have also been named as Defendants in this action.[3]

According to the Amended Complaint, Detective Dent was the individual in charge of the alleged conduct that led Barasky to suffer harm and file suit.[4] It all began on October 2, 2020, when Dent arrested a man named Matthew Thomas Sumpter for illegally selling suboxone, a controlled substance.[5] Sumpter offered to cooperate with Dent by giving him "information" about where he had purchased

---

[1]    Doc. 21 ¶ 8.
[2]    *Id*. at ¶¶ 8-13.
[3]    *Id*. at ¶¶ 14-15.
[4]    *Id*. at ¶ 27 ("Det. Dent was also in charge of this investigation and supervising every other Defendant.").
[5]    *Id*. at ¶ 35.

drugs in the past.[6] Sumpter informed Dent that he had previously purchased heroin from Barasky, and then—at Dent's direction—Sumpter contacted a person via telephone whom he alleged was Barasky.[7] Sumpter made an oral agreement to purchase heroin from the person on the other end of the line.[8]

Barasky alleges that Sumpter was under the influence of heroin on the day he shared this information with Dent, and that Dent was aware that Sumpter had four prior *crimen falsi* (*i.e.*, a crime involving falsehood) convictions, which the Amended Complaint alleges should have called his credibility into serious question.[9] Despite these alleged red flags, Dent conducted no further independent investigation to verify that Sumpter was being truthful and assumed that the person on the other line of the telephone call with Sumpter was in fact Barasky.[10]

Later that day, Defendants Bell, Gardner, Hope, Kriner, and Havens initiated a traffic stop of Barasky's vehicle, at a location that was not the designated meeting location for the purported drug deal with Sumpter.[11] It is worth noting that Barasky alleges he committed no traffic violation to justify the stop.[12] These Defendants immediately arrested Barasky, searched his vehicle, and Dent conducted a

---

[6]  *Id*. at ¶¶ 36, 40-41.
[7]  *Id*. at ¶¶ 40-41.
[8]  *Id*. at ¶ 46.
[9]  *Id*. at ¶¶ 39, 44.
[10]  *Id*. at ¶ 45.
[11]  *Id*. at ¶¶ 48-49.
[12]  *Id*. at ¶ 50.

warrantless search of a cell phone found in Barasky's vehicle.[13] During this search, no controlled substances or contraband were found in Barasky's vehicle or on his person.[14] Following this arrest and search, Dent did obtain a search warrant for Barasky's vehicle, and Barasky was taken to the Lycoming County Prison and incarcerated after his arrest.[15] Upon arrival to the prison, Barasky was forced into a "dry cell" (presumably a cell without plumbing facilities such as a shower, toilet, or sink) where police could monitor Barasky and search his excrement to determine if he had ingested any controlled substances.[16]

Ultimately, no controlled substances or contraband were ever found.[17] Nonetheless, Dent filed a criminal complaint with the Magisterial District Court, charging Barasky with one count of Criminal Use of a Communication Facility under 18 Pa.C.S. § 7512(a).[18] With bail originally set too high for Barasky to afford, he was incarcerated until May 19, 2021, when his bail was eventually lowered.[19] Altogether, Barasky served 229 days in prison.[20] On June 25, 2020, the Court of Common Pleas of Lycoming County dismissed the count against Barasky and

---

[13]  *Id*. at ¶¶ 51, 54.
[14]  *Id*. at ¶ 53.
[15]  *Id*. at ¶¶ 55, 57.
[16]  *Id*. at ¶ 58.
[17]  *Id*. at ¶¶ 60-61.
[18]  *Id*. at ¶ 62.
[19]  *Id*. at ¶¶ 63-65.
[20]  *Id*. at ¶ 66.

suppressed evidence that had been gathered as the result of the unconstitutional arrest and search of Barasky's person, vehicle, and phone.[21]

Barasky alleges to have suffered numerous harms during this long period of incarceration, including forced withdrawal from his college courses, loss of employment, loss of freedom, reputational harm, and financial harm.[22] Barasky filed suit against all Defendants in an original complaint filed December 7, 2021.[23] Barasky then filed an Amended Complaint on February 16, 2022,[24] which each Defendant has moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[25] Those motions are ripe for disposition.

## II.   LAW

Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief

---

[21]   *Id.* at ¶ 70.
[22]   *Id.* at ¶ 67.
[23]   Doc. 1.
[24]   Doc. 21.
[25]   Docs. 23 (Motion to Dismiss filed by Defendants Dent, Havens, and Lycoming County), 24 (Motion to Dismiss filed by Defendants Hope, Kriner, and Old Lycoming Township), 25 (Motion to Dismiss filed by Defendants Bell, Gardner, and City of Williamsport). This Court notes that Barasky filed an opposition brief in response to each of these motions, and that only Defendants Hope, Gardner, and City of Williamsport filed a reply brief. This Court also notes that in Section K of their Motion to Dismiss, Bell, Gardner, and the City of Williamsport "adopt any additional arguments . . . made by any other defendant not specifically addressed herein as if the same were set forth at length herein." Doc. 40 at p. 24. This is impermissible. Parties are responsible for making their own arguments, and while this Court does review all parties' arguments and apply them to other parties when applicable, it is inappropriate for a party to "reserve" any hypothetical better arguments for itself. This "adoption" is meaningless and should not be made again in future filings.

can be granted." Following *Bell Atlantic Corp. v. Twombly*[26] and *Ashcroft v. Iqbal,*[27] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[28] In deciding a motion to dismiss, courts within the United States Court of Appeals for the Third Circuit must follow three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) assume the veracity of all well-pleaded factual allegations and determine whether they plausibly give rise to an entitlement to relief.[29]

With respect to claims brought under 42 U.S.C. § 1983, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*."[30] A plaintiff may show personal involvement "through allegations of personal direction or of actual knowledge and acquiescence," but "[a]llegations of participation or actual knowledge and acquiescence" must "be made with appropriate particularity."[31] "Each named defendant must be shown, through the complaint's allegations, to have

---

[26]  550 U.S. 544 (2007).

[27]  556 U.S. 662 (2009).

[28]  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

[29]  *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

[30]  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (internal quotations and citations omitted).

[31]  *Rode*, 845 F.2d at 1207.

6

been personally involved in the events or occurrences upon which Plaintiff's claims

are based."[32]

## III.   ANALYSIS

### A.   Probable Cause

Key to this Court's analysis of whether the Amended Complaint sufficiently

pleads facts upon which relief can be granted is whether the Amended Complaint

plausibly pleads the existence of probable cause at the time of Barasky's arrest.

Typically, "the existence of probable cause in a Section 1983 action is a question of

fact."[33] However, a court can conclude "that probable cause did not exist as a matter

of law if the evidence viewed in the light most favorable to the non-moving party

would not reasonably support a finding of probable cause."[34] "It is the court's role

to determine whether the objective facts available to the police officer at the time of

the arrest would justify a reasonable belief that an offense was being committed."[35]

"Probable cause exists when the facts and circumstances which are within the

knowledge of the police officer at the time of the arrest, and of which he [or she] has

---

[32]   *Hagerty v. Smith*, No. 3:18-1973, 2021 U.S. Dist. LEXIS 44372, at *4 (M.D. Pa. Mar. 9, 2021) (citing *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3d Cir. 1976)); *see Donahue v. Stalfa*, No. 3:CV-13-1276, 2013 U.S. Dist. LEXIS 107446, at *7-8 (M.D. Pa. June 11, 2013); *Robinson v. Varano*, No. 3:CV-10-2131, 2012 U.S. Dist. LEXIS 91178, at *13-14 (M.D. Pa. Feb. 9, 2012); *Mitchell v. Dauphin County Comm'rs*, No. 1:CV-11-1240, 2011 U.S. Dist. LEXIS 87903, at *5 (M.D. Pa. July 18, 2011).

[33]   *Weiss v. Pa. State Game Comm'n*, No. 3:CV-11-1495, 2011 U.S. Dist. LEXIS 124174, at *24 (M.D. Pa. Sept. 9, 2011) (quoting *Wilson v. Russo*, 212 F.3d 781, 796 (3d. Cir. 2000) (citing *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d. Cir. 1997))).

[34]   *Id*. at *25; *see Sherwood*, 113 F.3d at 401.

[35]   *Id*. (internal quotations and citations omitted).

reasonable trustworthy information, are sufficient to warrant a [person] of reasonable caution in the belief that the suspect has committed or is committing a crime."[36]

As a preliminary matter and because this inquiry is essential for more than one of Barasky's claims, this Court will begin by determining if the Amended Complaint sufficiently pleads facts demonstrating whether the law enforcement Defendants had probable cause at the time of Barasky's arrest.

### 1.   Defendant Dent

The Amended Complaint's facts as to Detective Kevin Dent are the most detailed. Specifically, those facts are as follows: (i) Dent directed Sumpter, who may or may not have been under the influence of heroin, to call Sumpter's drug dealer; (ii) after Sumpter placed that call, Dent had no way to know who was on the other line (and whether that individual was Barasky); (iii) Dent was aware that Sumpter had four *crimen falsi* convictions and still chose to use him as an informant with no additional investigation to corroborate Sumpter's statements; (iv) after Barasky was stopped in his vehicle—not at the planned "drop site"—and the arresting officers found no contraband in Barasky's vehicle or on his person, Dent still proceeded to conduct a warrantless search of Barasky's cell phone; (v) after all this, and after no substances or contraband were found during Barasky's time in the dry cell, Dent still

---

[36]   *Dempsey v. Bucknell Univ.*, 76 F.Supp. 3d 565, 579 (M.D. Pa. 2015).

proceeded to file a criminal complaint against Barasky, which led for Plaintiff to be incarcerated for more than 200 days.[37]

Dent argues that "the facts alleged against [Dent] are limited to his involvement in filing criminal charges" and only materially addresses the Amended Complaint's Dent-specific allegations as they relate to the malicious prosecution claim. Dent argues that "[P]laintiff's allegation that Dent failed to investigate the information provided by Mr. Sumpter is insufficient," and that "the allegation that Dent did not perform an investigation is contradicted" by the Amended Complaint's "claims in paragraph 54 that Dent and Havens performed a search on [P]laintiff's cell phone" to verify the information given by Mr. Sumpter.[38] Dent further argues that "[w]hile that search was later suppressed, the conduct of that search indicates that Dent sought to verify information," citing a case from the United States District Court for the Northern District of New York, which states: "the fact that evidence which served the basis for an arrest is later suppressed does not, for purposes of a [Section] 1983 claim, eviscerate the validity of the officer's decision based on his awareness of that evidence at the time of arrest."[39]

While this statement is true, it does not obviate all of the Amended Complaint's allegations about Dent's conduct that took place prior to the alleged

---

[37] Doc. 21 ¶¶ 36-66.
[38] Doc. 29 at 14.
[39] Doc. 29 at 14-15, quoting *Miller v. Carney*, No. 9:12-CV-972, 2014 U.S. Dist. LEXIS 132780, at *18 (N.D.N.Y. Aug. 7, 2014).

warrantless search of Barasky's cell phone. Those allegations, even when viewed in the light most favorable to Dent, plausibly demonstrate that Dent did not have probable cause to orchestrate the stop of Barasky's vehicle and the various searches that followed. The Amended Complaint alleges that prior to procuring Barasky's cell phone: (i) Dent relied on an unreliable informant who may have been under the influence of drugs; (ii) Barasky never showed up to the "drop site," yet Dent directed for his vehicle to be stopped at an unrelated location anyway (and after Barasky had committed no traffic violations); and (iii) no controlled substances were found in Barasky's vehicle or on Barasky's person. The facts plausibly allege that only after his officers found nothing on Barasky or in his vehicle, Dent searched Barasky's cell phone and did so without a warrant.  Notably, the results of that warrantless search have not been alleged and were ultimately suppressed by the Court of Common Pleas; it is not for this Court to speculate regarding what Dent did or did not find.

Probable cause is assessed in part by determining the alleged facts and circumstances which are within the knowledge of the police officer at the time of the arrest. Here, there was no reasonable indication that Barasky had committed or was about to commit a crime. Probable cause analysis also requires the officer to have reasonable, trustworthy information, and—as alleged—Mr. Sumpter's information was not reliable due to his four prior *crimen falsi* convictions and alleged drug use on the same day he spoke to Dent. These alleged facts and circumstances, paired with the alleged unreliability of Mr. Sumpter's statements, would not lead a

reasonable person to believe that Barasky had committed or was committing a crime. Therefore, this Court finds that the Amended Complaint sufficiently pleads facts demonstrating that Dent did not have probable cause when he directed the arresting officers to stop Barasky's vehicle, search Barasky and his vehicle, and seize Barasky's cell phone (which Dent then searched without a warrant).

### 2.   Remaining Law Enforcement Defendants

As for Defendants Havens, Gardner, Kriner, and Hope, this Court finds that the Amended Complaint fails to sufficiently allege facts demonstrating that they lacked probable cause in arresting, searching, and/or seizing Plaintiff.  Unlike the allegations as to Dent, the allegations as to these Defendants are either nonexistent, conclusory, or vague.[40] Barasky does not plausibly allege that these Defendants knew that the informant was unreliable or otherwise behaved unreasonably under the standard required for probable cause.

### B.   Count I (False Arrest) and Count IV (False Imprisonment)

A false arrest is "one which either the arrest is made without probable cause or the arrest was made by a person without privilege to do so."[41] In Pennsylvania, "the cases involving false arrest claims against police officers turn on the existence

---

[40] *E.g.*, Doc. 21 at ¶¶ 49 ("PO Bell, PO Gardner, Chief Hope, PO Kriner, and Det. Havens initiated a traffic stop upon Plaintiff's vehicle."), 52 ("Det. Havens, PO Bell, PO Gardner, Chief Hope, and PO Kriner also searched Plaintiff's vehicle."), 81 ("Defendants had no probable cause to believe Plaintiff committed a crime.").

[41] *Dempsey*, 76 F.Supp. 3d at 576 (internal quotations and citations omitted).

or nonexistence of probable cause."[42] Generally, a claim for false arrest requires there to have been: (1) an arrest; (2) made without probable cause.[43] A Section 1983 claim for false arrest "turns on whether the officer had probable cause to arrest for any offense[.]"[44]

"False arrest and false imprisonment are essentially the same claim," and "there are two elements to a claim of false imprisonment under Pennsylvania law: (1) the detention of another person; and (2) the unlawfulness of such detention."[45] Pennsylvania state law false arrest claims and federal constitutional false arrest claims are "co-extensive as to both elements of proof and elements of damages."[46] Where a police officer lacks probable cause to make an arrest, "the arrestee has a claim under [Section 1983] for false imprisonment based on a detention pursuant to that arrest."[47] A claim for false arrest will fail "if there was probable cause for at least one of the offenses involved."[48] Because Barasky's false arrest and false imprisonment claims have the same basis and identical elements, the Court will address them together.[49]

---

[42]  *Kokinda v. Breiner*, 557 F.Supp.2d 581, 593 (M.D. Pa. 2008).

[43]  *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012)).

[44]  *Brackbill v. Ruff*, No. 1:17-CV-01046, 2022 U.S. Dist. LEXIS 60600, at *10-11 (M.D. Pa. Mar. 31, 2022).

[45]  *Kokinda*, 557 F.Supp. at 593 (internal citations and quotations omitted).

[46]  *Id*. at 593-94.

[47]  *Id*. at 592 (quoting *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d. Cir. 1995)).

[48]  *Id*.

[49]  *See Meketa v. Kamoie*, 955 F.Supp.2d 345, n.3 (M.D. Pa. 2013) ("Because the Plaintiff's false arrest and false imprisonment claims have the same basis and identical elements, we address them *pari passu*.").

As discussed above, the Amended Complaint sufficiently alleges that only one Defendant—Kevin Dent—acted without probable cause in the events leading up to, and in the actual effectuation of, Barasky's arrest. And because Dent is alleged to have been the officer who directed the arrest, the Amended Complaint therefore sufficiently pleads facts satisfying both elements of a claim for false arrest and false imprisonment against Dent. Therefore, Dent's Motion to Dismiss as to Counts I and IV is denied.

Because the Amended Complaint fails to sufficiently allege that Defendants Havens, Bell, Gardner, Kriner, and Hope acted without probable cause, as discussed *supra*, that element for false arrest and false imprisonment is not satisfied. Those Defendants' Motions to Dismiss as to Counts I and IV are therefore granted. Further, as discussed *infra*, the Amended Complaint fails to sufficiently plead facts alleging *Monell* claims against the Municipal Defendants. Accordingly, the Municipal Defendants' Motions to Dismiss as to Counts I and IV are granted.

### C.    Count II: Malicious Prosecution

A fourth amendment claim of malicious prosecution under Section 1983 requires proof of five elements: "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his [or her] favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered

deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."[50]

In most cases, "a prosecutor rather than a police officer initiates a criminal prosecution," because "[t]he principal player in carrying out a prosecution is not [a] police officer but a prosecutor."[51] Therefore, in most circumstances, "a plaintiff cannot proceed against a police officer for a claim of malicious prosecution because a prosecutor, not a police officer, initiates criminal proceedings against an individual."[52] However, a plaintiff "can proceed against a police officer for malicious prosecution only if the officer fails to disclose exculpatory evidence to prosecutors, makes false or misleading reports to the prosecutor, omits material information from the reports, or otherwise interferes with the prosecutor's ability to exercise independent judgment in deciding whether to prosecute."[53]

The Amended Complaint brings a claim for malicious prosecution only against Dent, alleging that when he filed the criminal complaint with the Magisterial District Court on October 2, 2020, the affidavit of probable cause "omitted crucial material information regarding his case thereby misleading the Magisterial District

---

[50]   *Vega v. Ripley*, No. 1:11-CV-2015, 2013 U.S. Dist. LEXIS 191975, at *26 (M.D. Pa. May 15, 2013) (citing *Dice v. Johnson*, 711 F. Supp. 2d 340, 364-65 (M.D. Pa. 2010) (quoting *Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d. Cir. 2007)).

[51]   *Milbourne v. Baker*, No. 11-cv-1866, 2012 U.S. Dist. LEXIS 72014, at *36 (E.D. Pa. May 23, 2012) (citing *Zeglen v. Miller*, No. 3:04cv1940, 2008 U.S. Dist. LEXIS 20344, at *8 (M.D. Pa. Mar. 12, 2008)) (other internal quotations and citations omitted).

[52]   *Id*. (internal quotations and citations omitted).

[53]   *Id*. (internal quotations and citations omitted).

[Judge] when making his bail determination."[54] Barasky highlights the following material allegedly omitted from the affidavit: that no contraband was ever found; that Mr. Sumpter had four *crimen falsi* convictions and had used heroin on October 2, 2020; and the police had conducted no additional independent investigation to corroborate the lone statements made by Mr. Sumpter.[55]

The other elements, Barasky alleges, are satisfied because: (i) the criminal proceeding ended in Plaintiff's favor when the charges were dismissed; (ii) Dent acted with a malicious purpose other than to bring Barasky to justice when he filed the criminal complaint based solely on Sumpter's statements after no contraband was found in Barasky's car and Barasky failed to show up to the "drop" site; and (iii) Barasky suffered a deprivation of liberty by being incarcerated.[56]

Dent argues that the Amended Complaint's allegations as to the malicious purpose element are "insufficient and mostly duplicative."[57] In Dent's view, Barasky "fails to allege what facts were known to Dent at the time of the swearing of his affidavit," which is the moment critical to the determination of whether Dent acted maliciously.[58] Dent further alleges that, under the law, his alleged failure to investigate Sumpter's claim does not indicate a malicious purpose, and that Dent and Havens did perform a search of Plaintiff's cell phone—while the results of that

---

[54] Doc. 21 at ¶¶ 108-09.
[55] *Id*. 109-10.
[56] *Id*. 21 at ¶¶ 106-126.
[57] Doc. 29 at 13.
[58] *Id*. at 14.

search were ultimately suppressed, they still could have served as Dent's basis to file a criminal complaint against Plaintiff for a legitimate, non-malicious purpose.[59] And the "results of that search would have been known to Dent when he made the decision to charge [P]laintiff."[60]

Despite Dent's attempted "hints" as to what the warrantless search of the phone may have revealed, that information is not relevant to this Court at the motion to dismiss stage. This Court's task is to assess what is pled in the Amended Complaint, and to determine whether those allegations satisfy the Rule 12(b)(6) standard. And in this case and as to Barasky's malicious prosecution claim, that standard is satisfied.

Malice "has been stated to include ill-will in the sense of spite, the use of prosecution for an extraneous, improper purpose, or the reckless and oppressive disregard of the plaintiff's rights."[61] Malice may also be "inferred from the absence of probable cause."[62] This Court finds that the Amended Complaint's allegations satisfy the malice element of Barasky's malicious prosecution claim. Barasky sufficiently alleges that Dent acted without probable cause when he filed the criminal complaint and omitted material information from it (*e.g.*, the unreliability of the informant and the fact that no contraband was found), and that the totality of Dent's

---

[59]   *Id*.

[60]   *Id*.

[61]   *Carson v. Aurand*, No. 1:17-cv-01263, 2019 WL 2539447, at *8 (M.D. Pa. June 20, 2019) (internal quotations and citations omitted).

[62]   *Id*. (internal quotations and citations omitted).

alleged actions demonstrate a recklessness or oppressive disregard for Barasky's rights.

Therefore, because the Amended Complaint's allegations satisfy the elements for malicious prosecution, Dent's Motion to Dismiss is denied as to Count II.

### D.     Count III: Unconstitutional Conspiracy

A civil conspiracy claim under Section 1983 requires proof of the following: "(1) two or more individuals; (2) acting 'under color of law'; (3) [who] reached an agreement to deprive the plaintiff of a constitutional right."[63] "To properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a constitutional agreement can be inferred," and this Court will not consider any "conclusory allegations [such as] that there was a corrupt conspiracy, an agreement, or an understanding in place between the [d]efendants."[64] A plaintiff must "set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose."[65] A conspiracy is "not parallel conduct by different parties; it must embody, at its

---

[63]  *Parkway Garage, Inc. v. City of Phila.*, 5 F.3d 685, 700 (3d Cir. 1993).

[64]  *Figueroa v. Shenandoah Borough*, No. 3:21-601, 2022 U.S. Dist. LEXIS 71077, at *9 (M.D. Pa. Apr. 18, 2022).

[65]  *Smith v. Law Office of Eric J. Weisbrod P.C.*, No. 1:21-CV-01243, 2021 U.S. Dist. LEXIS 160905, at *8 (M.D. PA. Aug. 25, 2021) (quoting *Shearin v. E.F. Hutton Grp., Inc.*, 885 F.2d 1162, 1166 (3d Cir. 1989), *abrogated on other grounds by Beck v. Prupis*, 529 U.S. 494 (2000)).

heart, 'an agreement between the defendants and state officials—a meeting of the minds—to violate the plaintiff's rights."[66]

The Amended Complaint alleges that all Defendants agreed to arrest Barasky without probable cause, and that all Defendants "knew that no probable cause existed to arrest and prosecute Plaintiff."[67] The conspiracy is alleged to have begun on October 2, 2020, and to have ended when the state court charge was dismissed on June 25, 2021.[68] Defendants Bell and Dent are alleged to have played specific roles in the conspiracy—Bell by ensuring that Plaintiff would be segregated in a dry cell, and Dent by filing the criminal complaint against Barasky.[69]

Defendants, in their respective Motions, argue that that the Amended Complaint fails to sufficiently plead specific factual allegations required to satisfy the elements of a Section 1983 conspiracy claim.[70] This Court agrees as to all Defendants. Indeed, the Amended Complaint names nine defendants, and only devotes eleven conclusory paragraphs to this claim.[71] The allegations fail to state the "certain actions of the alleged conspirators," which—for this matter—would require specific allegations as to the involvement of each named Defendant. The heart of the

---

[66]   *Smith v. Law Office of Eric J. Weisbrod P.C.*, No. 1:21-CV-01243, 2021 U.S. Dist. LEXIS 160905, at *8 (M.D. PA. Aug. 25, 2021) (internal citations and quotations omitted); *see Zenquis v. City of Phila.*, 861 F.Supp. 2d 522, 528-29 (E.D. Pa. 2012).

[67]   Doc. 21 at ¶ 129, 130.

[68]   *Id*. at ¶¶ 70, 131, 135.

[69]   *Id*. at ¶¶ 133-34.

[70]   Doc. 29 at 10-11; Doc. 40 at 13-15; Doc. 27 at 12-13.

[71]   Doc. 21 at ¶¶ 127-37.

Amended Complaint's allegations is that "[t]he agreements between Defendants was to seize Barasky and immediately arrest him without probable cause solely on the word of Mr. Sumpter."[72]

While the Amended Complaint describes the purpose of the conspiracy (to arrest Barasky without probable cause) and the duration of the conspiracy (from October 2020 to June 2021), it fails to attribute certain actions to each Defendant and instead—and at best—sets forth allegations that certain of the Defendants engaged in parallel conduct. As discussed above, parallel conduct alone is insufficient to demonstrate an unconstitutional conspiracy under Section 1983. Even where the Amended Complaint does allege certain conduct only by Defendants Bell and Dent, the conduct alleged does not describe those Defendants working together or with the other Defendants—it only describes their separate, individual actions.[73] For that reason, Defendants' Motions to Dismiss Count III are granted.

### E.    The Municipal Defendants

Plaintiff brings claims against the Municipal Defendants under Section 1983. A plaintiff asserting a cause of action under Section 1983 must allege that: (a) "some person has deprived [her] of a federal right," and (b) "the person who has deprived

---

[72] Doc. 21 at ¶ 129.

[73] *Id*. at ¶¶ 133-34 ("PO Bell further carried out the purpose of this conspiracy by calling the Lycoming County Prison…" and "Dent furthered the purpose of the conspiracy by filing a criminal complaint against Plaintiff . . .").

[her] of that right acted under color of state or territorial law."[74] In the Third Circuit, it is established that *Monell v. N.Y.C. Department of Social Services*[75] "sets forth the test to determine if municipalities, not individuals, can be held liable under § 1983."[76] "Municipalities and other local government entities are 'persons' for purposes of Section 1983 liability."[77] Municipal liability "only arises when a government causes an employee to violate another's constitutional rights by an official custom or policy."[78] Under *Monell*, a plaintiff must "identify the challenged policy or custom, demonstrate proper attribution to the public entity, and show a causal link between the execution of the policy or custom and the injury suffered."[79]

A policy exists "when a decisionmaker possessing final authority to establish public policy with respect to the disputer action issues an official proclamation, policy, or edict."[80] A custom "is an act that is not formally approved but is nonetheless 'so widespread as to have the force of law.'"[81] A plaintiff may also establish municipal liability by demonstrating that "a policymaker failed to take affirmative action despite an obvious need to correct the 'inadequacy of existing practice [which is] so likely to result in the violation of constitutional rights' that

---

[74] *Jarrett v. Twp. of Bensalem*, 312 F. App'x 505, 506-07 (3d Cir. 2009) (internal quotations omitted).

[75] 436 U.S. 658 (1978).

[76] *Lepre v. Lucas*, 602 Fed. App'x 864, 869 n.4 (3d Cir. 2005) (per curiam).

[77] *Loomis v. Montrose Borough Police Dep't*, No. 3:20-CV-1610, 2021 U.S. Dist. LEXIS 126980, at *8 (M.D. Pa. July 8, 2021) (citing *Monell*, 436 U.S. at 690).

[78] *Id.*

[79] *Id.* (internal citations omitted).

[80] *Id.* (internal citations omitted).

[81] *Id.* (internal citations omitted).

inaction exhibits 'deliberate indifference' to the need"—often referred to as the "deliberate indifference" standard.[82] A municipality exhibits deliberate indifference when it "disregard[s] a known or obvious consequence of [its] . . . action."[83]

The Third Circuit has elaborated on this standard, stating that "a policy or custom may also exist where the policymaker has failed to act affirmatively at all, [when] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need."[84] In those circumstances, the municipal actor is determined to have adopted a "policy of inaction" where "the government's failure to act amounts to deliberate indifference towards the plaintiff's constitutional rights."[85] "Generally, deficient training can only amount to the requisite deliberate indifference 'where the failure to train has caused a pattern of violations.'"[86]

A *Monell* claim may survive in the absence of such a pattern, however, when "(1) a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools [or skills] to handle recurrent situations; and (2) where the likelihood of recurrence and predictability of the

---

[82]   *Id.* at *8-9 (quoting *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)).

[83]   *Id.* at *9 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).

[84]   *Forshey v. Huntingdon Cnty.*, No. 1:13-CV-00285, 2015 U.S. Dist. LEXIS 117777, at *9 (M.D. Pa. Aug. 10, 2015) (quoting *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d. Cir. 2003)).

[85]   *Id.*

[86]   *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000).

violation of a citizen's rights could justify a finding that policymakers' decision not to train an officer reflected 'deliberate indifference' to the obvious consequence of the policymakers' choice—namely, a violation of a specific constitutional or statutory right."[87] However, it is established in the Third Circuit that requiring a plaintiff to identify a particular policymaker or policy before discovery is unduly harsh, and that at the motion to dismiss stage, a plaintiff does not need to specify the policies and practices in place.[88]

The Amended Complaint alleges that each Municipal Defendant had a "policy or custom . . . to fail to train and supervise municipal employees on how to properly decide if probable cause exists to place someone under arrest."[89] This policy or custom includes "fail[ure] to train and supervise municipal employees on when confidential informants can be reliable enough to establish reliable cause."[90] "Municipal policymakers for [the municipal Defendants] knew that their employees, servants, or agents, specifically individuals working with or on the [Narcotics Enforcement Unit], would confront situations where a person would be arrested for a suspected crime and where informants would be utilized."[91]

---

[87]   *Kline ex rel. Arndt v. Mansfield*, 255 F. App'x 624, 629 (3d Cir. 2007).

[88]   *Marte v. Oliver*, No. 3:20-CV-00252, 2020 U.S. Dist. LEXIS 207893, at *15 (M.D. Pa. Nov. 6, 2020) (internal citations and quotations omitted).

[89]   Doc. 21 at ¶ 87.

[90]   *Id*. at ¶ 88.

[91]   *Id*. at ¶ 95.

Each Municipal Defendant argues that the Amended Complaint's allegations fail to satisfy the requirements of *Monell* and its progeny because the allegations are bereft of facts establishing the existence of a policy or custom as defined by the *Monell* doctrine.[92] Barasky, however, argues that the Amended Complaint's allegations are sufficient. This Court disagrees.

The *Monell* standard is a high one, and the facts alleged in the Amended Complaint do not satisfy that standard. Essentially, the Amended Complaint pleads that, combined, the Municipal Defendants have a "policy or custom" of failing to adequately train their law enforcement employees to handle informants and assess whether probable cause exists before arresting a person. As the Third Circuit has made clear, a "failure to train" deliberate indifference claim must allege a pattern of violations committed by the municipality or satisfy the even higher standard required for a single-incident failure-to-train claim of deliberate indifference. Deliberate indifference is not sufficiently alleged here.

The Amended Complaint does not allege a pattern whereby the Municipal Defendants' failure to train resulted in other individuals' rights being violated in a similar manner as Barasky's. Such a pattern could, for example, link the Municipal Defendants' conduct to situations where other individuals where unlawfully

---

[92]   Doc. 20 at pp. 20-23; Doc. 27 at pp. 9-12; Doc. 29 at pp. 7-10.

detained, where officers failed to establish probable cause, or where officers did not work properly with informants. No such pattern is alleged.

Because no pattern is alleged, Barasky's *Monell* claims can survive only if they satisfy the standard required for single-incident deliberate indifference. They do not. Setting aside the fact that it is implausible to allege—in the absence of a sufficiently pled factual predicate or unique circumstance[93]—that three municipalities have wholly failed to train all of their officers in the routine concepts of establishing probable cause and working with informants, the Amended Complaint could be read to imply that the Municipal Defendants do train their officers, and that there is only a "need for more or different training."[94] There either is training or there is not, and if there is not, then Barasky needs to plead more facts that speak to the plausibility of the Municipal Defendants' alleged failure to train their police officers to perform such a basic and well-established function of their jobs.

While Barasky is given some leeway at the motion to dismiss stage, more must be alleged than what is set forth in the Amended Complaint. The current

---

[93] *See*, *e.g.*, *Marte*, 2020 U.S. Dist. LEXIS 207893, at *14 (alleging that a lack of training persisted while Pennsylvania's Latino population had been steadily increasing, which should have put the municipality on notice that a continued lack of training would lead to improper conduct and constitutional violations by police officers); *J.Q.T. v. Amato*, No. 17-3316, 2018 U.S. Dist. LEXIS 162368, at *15 (E.D. Pa. Sept. 21, 2018) (plaintiff's single-incident *Monell* claim surviving motion to dismiss because plaintiff alleged that the municipality not only failed to train employees as to how to detect the signs of sexual abuse, but also had no policy whatsoever requiring teachers to report suspicious behavior of fellow colleagues).

[94] Doc. 21 at ¶ 89.

allegations are conclusory and implausible. Accordingly, the Municipal Defendants'
Motions to Dismiss Counts I, III, and IV are granted.

## IV.    CONCLUSION

For the reasons stated above, the Motions to Dismiss filed by Defendants
Havens, Bell, Gardner, Kriner, Hope, Lycoming County, Old Lycoming Township,
and the City of Williamsport are granted without prejudice as to Counts I, III, and
IV. Defendant Dent's Motion to Dismiss is denied as to Counts I, II, and IV, and
granted without prejudice as to Count III.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge