IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY BARASKY, | No. 4:21-CV-02041 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| KEVIN DENT, TYSON HAVENS, JOSHUA BELL, CLINTON GARDNER, CHRISTOPHER KRINER, JOSEPH HOPE, LYCOMING COUNTY, OLD LYCOMING TOWNSHIP, and CITY OF WILLIAMSPORT | |
| Defendants. | |

MEMORANDUM OPINION

APRIL 4, 2023

Plaintiff Anthony Barasky sues Defendants, all law enforcement officers, for violating his civil rights when they stopped his vehicle and arrested him in October 2020. Defendants planned to arrest Barasky after arresting another individual who claimed he had bought narcotics from Barasky in the past and could do so again. However, Defendants were aware of several facts that cast substantial doubt on the veracity of the informant and the reliability of his information.

Even so, Defendants took no effort to corroborate the informant's tip and positioned themselves to intercept Barasky. They eventually stopped his vehicle, searched it, Barasky, and Barasky's cell phone. They found no contraband but

arrested Barasky anyway. Barasky was incarcerated for 229 days, after which a court dismissed the charges against him.

Barasky alleges several civil rights violations arising from Defendants' actions. Defendants moved to dismiss Barasky's First Amended Complaint, which the Court granted in part and denied in part. Barasky has now filed a Second Amended Complaint ("SAC"), and Defendants have again moved to dismiss it. For the following reasons, the Court finds Barasky's allegations sufficient and denies Defendants' three motions.

## I. BACKGROUND

### A. Underlying Facts

On October 2, 2020, Defendant Detective Kevin Dent, a detective for the Lycoming County District Attorney, arrested Matthew Thomas Sumpter for illegally selling controlled substances while executing a search warrant on Sumpter's residence.[1] Defendants Officer Joshua Bell, Officer Clinton Gardner, Chief Joseph Hope, Officer Christopher Kriner, and Detective Tyson Havens were all present during the search of Sumpter's home.[2] Sumpter offered the officers information in exchange for reducing or eliminating the charges against him—he offered to

---

[1] SAC, Doc. 43 ¶¶ 33-36.
[2] *Id.* ¶ 37. Bell and Gardner worked for the City of Williamsport Police Department. *Id.* ¶¶ 10-11. Hope and Kriner worked for the Old Lycoming Township Police Department. *Id.* ¶¶ 12-13. Havens worked for the Lycoming County District Attorney. *Id.* ¶ 9. Although Defendants' employers are named in the caption, all claims against them were dismissed with prejudice. October 25, 2022 Order, Doc. 42.

purchase narcotics from Barasky, from whom he had previously purchased narcotics.[3] When Sumpter gave Defendants the information, they were aware that Sumpter was under the influence of heroin he had consumed earlier that day and had prior convictions for burglary, retail theft, theft from a motor vehicle, and access device fraud.[4]

At Dent's direction, Sumpter contacted another individual via telephone whom Sumpter alleged was Barasky.[5] Sumpter arranged to purchase "three grams of fentanyl" from the individual on the phone.[6] At the time, Dent could not verify that the individual on the phone was Barasky.[7] Defendants did not take any additional steps to corroborate any of the information Sumpter gave them.[8] Later that day, Dent met with Bell, Gardner, Hope, Kriner, and Havens and briefed them on Sumpter, the information Sumpter offered, and Dent's reasons for investigating Barasky.[9] At the meeting, the group formed a plan to intercept and arrest him.[10]

On October 2, 2020, Barasky was operating his vehicle in Old Lycoming Township, Lycoming County, Pennsylvania, when he was stopped by Gardner, Hope, and Kriner.[11] The stop did not occur in the location where Sumpter allegedly

---

[3] *Id.* ¶¶ 38, 42.
[4] *Id.* ¶¶ 40-41, 46-48.
[5] *Id.* ¶ 43.
[6] *Id.* ¶ 50; *see id.* ¶ 43.
[7] *Id.* ¶ 44.
[8] *Id.* 49.
[9] *Id.* ¶¶ 51-52.
[10] *Id.* ¶ 52.
[11] *Id.* ¶¶ 53, 57.

arranged to purchase narcotics from the individual on the phone.[12] Havens was acting in an undercover capacity at the time, keeping an eye out for Barasky, but he left those duties to assist Bell, Gardner, Hope, and Kriner in stopping Barasky.[13] Once Barasky pulled over, all five of the officers pointed their firearms and shouted orders at him.[14] Gardner positioned himself on the passenger side of Barasky's vehicle, Bell and Havens took the driver's side, and Hope and Kriner stood in front of the vehicle.[15] Havens pulled Barasky out of the vehicle and placed him in handcuffs, read him his *Miranda* rights and informed him that he was under arrest.[16] Barasky did not violate any traffic laws before he was stopped by the officers.[17]

After his arrest, Havens, Bell, Gardner, Hope and Kriner searched Barasky, his vehicle, and his cell phone, but found no contraband.[18] Dent later obtained a search warrant for the vehicle.[19] Aside from the roadside search of Barasky's cell phone, Defendants did not further investigate its contents.[20] Defendants then took Barasky into custody and transported him to the Lycoming County Jail, where he was incarcerated in a dry cell, at Bell's direction, so police could determine whether

---

[12] *See id.* ¶ 54.
[13] *Id.* ¶¶ 55-56.
[14] *Id.* ¶ 59.
[15] *Id.* ¶¶ 60-62.
[16] *Id.* ¶¶ 67-68.
[17] *Id.* ¶ 70.
[18] *Id.* ¶¶ 71-73.
[19] *Id.* ¶ 75.
[20] *Id.* ¶ 77.

he ingested any contraband.[21] No contraband was found from the roadside search of Barasky, his vehicle, and his cell phone, or in the dry cell.[22]

Dent filed a criminal complaint charging Barasky with one count of criminal use of a communication facility, in violation of 75 Pa. C.S. § 7512(a).[23] Barasky could not make bail and was incarcerated for 229 days until the charges were dismissed following the suppression of any evidence collected at the traffic stop, at the order of President Judge Nancy L. Butts of the Court of Common Pleas of Lycoming County, Pennsylvania.[24] During his incarceration, Barasky suffered physical, financial, and reputational harm.[25]

### B. Procedural History

Barasky filed a First Amended Complaint alleging numerous civil rights claims against Defendants.[26] Defendants moved to dismiss Barasky's First Amended Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which the Court granted in part.[27] Surviving that first set of motions to dismiss are Barasky's false arrest, malicious prosecution, and false imprisonment claims against Dent.[28] All other claims were dismissed.[29]

---

[21] *Id.* ¶¶ 78-82.
[22] *Id.* ¶¶ 76, 77, 81, 82.
[23] *Id.* ¶ 83.
[24] *Id.* ¶¶ 84-87, 91.
[25] *Id.* ¶¶ 88, 90.
[26] *See* First Amended Complaint, Doc. 21.
[27] October 25, 2022 Order, Doc. 42.
[28] *Id.*
[29] *Id.*

Barasky has filed a new Second Amended Complaint and Defendants have filed a new set of motions to dismiss.[30] In the SAC, Barasky alleges false arrest claims under 42 U.S.C. § 1983 against all Defendants (Count I),[31] and realleges his malicious prosecution claim against Dent (Count II)[32]. He also alleges a conspiracy claim under section 1983 involving all Defendants (Count III).[33] And he lastly alleges a common-law false imprisonment claim against all Defendants (Count IV).[34] Barasky seeks compensatory and punitive damages, attorneys' fees, and costs.[35] Defendants' motions to dismiss have either been fully briefed or the time for additional briefing has expired. They are therefore ripe for disposition.

## II. LAW

Under Rule 12(b)(6) the Court dismisses a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the Supreme Court of the United States' landmark decisions *Bell Atlantic Corp. v.*

---

[30] Bell and Gardner MTD, Doc. 45; Kriner and Hope MTD, Doc. 47; Havens MTD, Doc. 48.
[31] SAC, Doc. 43 ¶¶ 95-126 (false arrest),
[32] *Id.* ¶¶ 127-47.
[33] *Id.* ¶¶ 148-68.
[34] *Id.* ¶¶ 169-73. Barasky also preserves several claims from his FAC against the municipal Defendants under *Monell v. Department of Social Services* for the purposes of appealing the Court's prior Order dismissing those claims (Count V). *Id.* ¶¶ 174-78. Defendants argue that Barasky's preservation of his *Monell* claims is either unnecessary or inappropriate. Whether it is necessary is a matter for our Court of Appeals to decide. Therefore, the Court will not address those preserved claims in this Memorandum. Barasky also demands a jury trial by way of a separate Count VI. *See id.* ¶ 180. The Court will interpret that paragraph as a demand for a jury trial rather than a separate count of the SAC.
[35] *Id.* at 35-36.

*Twombly*[36] and *Ashcroft v. Iqbal*,[37] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[38]

The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[39]

### III. ANALYSIS

#### A. False Arrest and False Imprisonment Claims (Counts I and IV)

Defendants frame their attack on Barasky's false arrest (Count I) and imprisonment claims (Count IV) along three lines: (1) Barasky has not sufficiently alleged the personal involvement of each Defendant,[40] (2) Barasky cannot establish

---

[36]  550 U.S. 544 (2007).
[37]  556 U.S. 662 (2009).
[38]  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).
[39]  *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).
[40]  Hope and Kriner MTD Br., Doc. 49 at 8-11.

7

that Defendants did not have probable cause,[41] and (3) Defendants are qualifiedly immune to Barasky's claims[42]. All are without merit.

### 1. Personal Involvement

Bell, Gardner, Hope, Kriner, and Havens first argue that the SAC fails to sufficiently allege their personal involvement in Barasky's arrest. Based on the allegations in the SAC—which the Court must take as true—the Court disagrees.

"A defendant in a civil rights action must have personal involvement in the alleged wrongs."[43] "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."[44] Such allegations "must be made with appropriate particularity."[45] Bell, Gardner, Hope, Kriner, and Havens argue that they were not personally involved despite Barasky's allegations that Defendants together executed the search warrant that led to Sumpter's information, met together to plan out intercepting Barasky, stopped his vehicle, and arrested him based on uncorroborated information from a witness who was under the influence of drugs, had a criminal history, and had no track record of providing accurate information to law enforcement.[46] The SAC sufficiently alleges that all Defendants were aware of the factors weighing against Sumpter's credibility, either

---

[41] Havens MTD Br., Doc. 51 at 9-10; Bell and Gardner MTD Br., Doc. 46 at 6-9.
[42] Hope and Kriner MTD Br., Doc. 49 at 14-15.
[43] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 537 n.3 (1981)).
[44] *Id.*
[45] *Id.*
[46] SAC, Doc. 43 ¶¶ 37, 47, 99-101, 102, 104-05.

through their own personal experience or because Dent told them before Barasky's arrest.[47]

If those allegations do not constitute Defendants' personal involvement in Barasky's arrest, the Court finds it difficult to imagine what would. Therefore, the Court concludes that Barasky has plausibly alleged the personal involvement of each Defendant.

### 2. Probable Cause

Bell, Gardner, Hope, Kriner, and Havens next argue that Barasky's allegations fall short of demonstrating that they did not have probable cause to arrest him. The Court determined in addressing Defendants' first motion to dismiss that Dent did not have probable cause.[48] Regarding the other Defendants, the Court concluded that Barasky had not sufficiently alleged their lack of probable cause.[49]

As discussed in the preceding section, the SAC's allegations paint a much clearer picture that the other Defendants actively participated in Dent's investigation. They appear to offer the same general arguments rejected by the Court with respect to Dent. Perhaps unsurprisingly then, the Court disagrees with Defendants and concludes that none of them had probable cause.

In Pennsylvania, "[f]alse arrest and false imprisonment are essentially the same claim" with the same two elements: (1) "the detention of another person"; and

---

[47] *See id.* ¶¶ 37-48.
[48] *Barasky v. Dent*, 2022 WL 14915557, at *4 (M.D. Pa. Oct. 25, 2022) (Doc. 41)
[49] *Id.* at *4-5.

(2) "the unlawfulness of such detention."[50] Both claims turn on "the existence or nonexistence of probable cause."[51] "The determination that probable cause exists for a warrantless arrest is fundamentally a factual analysis that must be performed by the officers at the scene."[52] "It is the function of the court to determine whether the objective facts available to the officers at the time of arrest were sufficient to justify a reasonable belief that an offense [had been] committed."[53] Probable cause should be "viewed from the standpoint of an objectively reasonable police officer."[54]

In cases like this one, courts assess tips from informants based on a totality of the circumstances, considering both the informant's "veracity" and his or her "basis of knowledge."[55] Two important factors in assessing an informant's tip are the "officer's ability to corroborate significant aspects of the tip," and "the tip's ability to predict future events."[56]

As the Court concluded in its prior opinion, Sumpter was an unreliable informant, based on Dent's awareness of his criminal history, his lack of any history of providing accurate information, and the fact that he was under the influence of

---

[50] *Kokinda v. Breiner*, 557 F. Supp. 2d 581, 593 (M.D. Pa. 2008) (Caputo, J.).
[51] *Kokinda*, 557 F. Supp. 2d at 593.
[52] *United States v. Glasser*, 750 F.2d 1197, 1206 (3d Cir. 1984).
[53] *Id.*
[54] *Ornelas v. United States*, 517 U.S. 690, 695 (1996).
[55] *United States v. Williams*, 974 F.3d 320, 350 (3d Cir. 2020) (quoting *Illinois v. Gates*, 462 U.S. 213 238-39 (1983)).
[56] *United States v. Ritter*, 416 F.3d 256, 263 (3d Cir. 2005) (citing *Alabama v. White*, 496 U.S. 325 (1990)). Theses two factors are normally considered in the context of anonymous informants. But as explained below, the lack of any reporting history on Sumpter's part and the various indicia of his unreliability make this situation more analogous to an anonymous tip than that from a reliable informant with a positive track record.

heroin when he spoke to Defendants.[57] The Court considers the fact that he was exchanging information for leniency as neutral. Some courts have looked positively on such statements against penal interest.[58] Others have not.[59] Here, the Court has doubts about Sumpter's motivations, which somewhat stem from his complete lack of veracity. Based on the allegations in the SAC—which, at this stage, the Court is bound to take as true—Sumpter could have been telling the truth, or this could be "a case of a [heroin] addict facing drug . . . charges casting blind aspersions, hoping that one might hit."[60] Although Sumpter was not an anonymous tipster, his known lack of any history of reliable information, and his known history of crime and drug use do not elevate him far beyond one on the scale of veracity.

---

[57] *See United States v. Larnerd*, 514 F. Supp. 3d 660, 672 (M.D. Pa. 2021) (Wilson, J.) (concluding that an officer's omission of an informant's drug use "was relevant information that a judge would want to know in order to assess the reliability of the information"); *see also United States v. Glover*, 755 F.3d 811, 816 (7th Cir. 2014) ("Cases that test the sufficiency of affidavits for warrants obtained based on informants are highly fact-specific, but information about the informant's credibility or potential bias is crucial.").

[58] *See, e.g.*, *United States v. Tyler*, 238 F.3d 1036 (8th Cir. 2001) ("After the police caught [the informant] with drugs in his possession, he admitted not only that he had obtained the drugs from [the defendant] but also that he had purchased drugs from [the defendant] on 'numerous occasions' over the previous year. Thus [the informant's] statements cannot be taken merely as blame-shifting because they admitted to criminal activities beyond those of which the police already knew him to be guilty").

[59] *See, e.g.*, *United States v. Bell*, 585 F.3d 1045, 1050 (7th Cir. 2009) ("For all we know, [the informant] could have been a rival drug dealer, an angry customer, or had some other beef with [the defendant], which is certainly a factor to consider when assessing the reliability of his statements."); *People v. Gleason*, 333 N.W.2d 85, 89 n.7 (Mich. App. 1983), *overruled on other grounds*, *People v. Russo*, 487 N.W.2d 698, 706 (Mich. 1992) (explaining that an informant caught with drugs inculpating his supplier "often [has] little or no probative value" given the informant's self-serving motivation to reduce his own punishment and the potential that he would deflect blame to some third party to protect his supplier).

[60] *United States v. Lampley*, ___ F. Supp. 3d ___, 2022 WL 2821923, at *4 (M.D. Pa. July 19, 2022).

Sumpter's basis of knowledge was his own personal experience purchasing narcotics from an individual whom he alleged was Barasky. An informant's direct knowledge of a suspect's criminal conduct is often sufficient to support a finding or probable cause.[61] But Sumpter's basis of knowledge cannot be divorced his unreliability as an informant. Indeed, there are no facts in the record regarding the level of detail of his information—an important factor in assessing the basis of an informant's knowledge.[62] Even where there is doubt, an officer can substantiate an otherwise unreliable informant's tip by independently corroborating it.[63] But neither Dent nor the other Defendants made any effort to corroborate Sumpter's information, which strongly weighs against a finding that they had probable cause.[64]

Havens directs the Court's attention to the fact that, based on Sumpter's tip, Defendants knew where Barasky would be, what car he was driving, and what he

---

[61] *See, e.g.*, *United States v. Hansmeier*, 867 F.3d 807, 812 (7th Cir. 2017) (emphasizing that the informant's information "was based on firsthand knowledge" that was "detailed," i.e., indicating type of drugs sold, available quantities, and price).

[62] *See United States v. Tuter*, 240 F.3d 1292, 1298 (10th Cir. 2001) (conclusory assertion that anonymous informant's information "firsthand" not sufficient where that statement "is completely unsubstantiated" and "the caller did not provide the kind of highly specific or personal details from which one could reasonably infer that the caller had firsthand knowledge").

[63] *Gates*, 462 U.S. at 242 ("[E]ven in making a warrantless arrest an officer 'may rely upon information received through an informant, rather than upon his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge.'"(quoting *Jones v. United States*, 362 U.S. 257, 269 (1960), *overruled on other grounds by United States v. Salvucci*, 448 U.S. 83 (1980))).

[64] *See United States v. Ritter*, 416 F.3d 256, 263 (3d Cir. 2005) ("Where corroboration or independent investigation after receipt of an anonymous tip is lacking—and thus the predictive value of the tip goes untested before a warrant is issued—courts have found officers' subsequent reliance on the warrant unreasonable.").

looked like.[65] An informant's tip that accurately identifies the suspect's vehicle or appearance can support a finding of probable cause.[66] But even if the Court were to infer those facts from the SAC—which it will not do at this stage—those observations are entirely consistent with innocent behavior. Corroboration of such innocent conduct can be the basis for probable cause, but only where the source of the information comes from a source more reliable than Sumpter.[67] Although Sumpter was not anonymous, Defendants had "no information about the veracity or historical reliability" of his information.[68] So, like anonymous tips, Sumpter's information "provides virtually nothing from which one might conclude that [he] is either honest or his information reliable."[69]

Bell, Gardner, Hope, Kriner, and Havens offer one additional argument: that they could properly rely on Dent's determination. That argument too is without merit. "[A]n otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest."[70] "[S]tatements by fellow officers conveying that there is probable cause for a person's

---

[65] Havens MTD Br., Doc. 51 at 9.
[66] *See United States v. Pearson*, 181 F. App'x 192, 195 (3d Cir. 2006) (noting that two confidential informants positively identified both the defendant's appearance and his vehicle, from which they both purchased drugs).
[67] *See, e.g., Draper v. United States*, 358 U.S. 307, 311-12 (1959) (upholding an arrest without a warrant solely upon a reliable informant's statement that the defendant was peddling narcotics, as corroborated by the fact that the informant's description of the defendant's appearance, and of where he would be on a given morning).
[68] *Tuter*, 240 F.3d at 1297.
[69] *Id.* (quoting *White*, 496 U.S. at 329).
[70] *Whiteley v. Warden*, 401 U.S. 560, 568 (1971).

13

arrest, by themselves, cannot provide the 'facts and circumstances' necessary to support a finding of probable cause.[71] Instead, "[p]robable cause exists only if the statements made by fellow officers are supported by actual facts that satisfy the probable cause standard."[72] Therefore, the lawfulness of an arrest "made in reliance on the statements of fellow officers 'turns on whether the officers who issued the [statements] possessed probable cause to make the arrest.'"[73]

Defendants do not identify any independent fact that they could have possibly relied upon beyond the information Dent relied upon. At some points, they argue that they could properly rely on Dent's information alone[74]—a position directly contradicted by controlling precedent. Accordingly, the Court concludes that Barasky has plausibly alleged that Bell, Gardner, Hope, Kriner, and Havens did not have probable cause that Barasky committed or was committing a crime when they arrested him.

### 3. Qualified Immunity

Defendants next assert they are qualifiedly immune to Barasky's claims. "Police officers, embodying the authority of the state, are liable under § 1983 when they violate someone's constitutional rights, unless they are protected by qualified

---

[71] *Rogers v. Powell*, 120 F.3d 446, 453 (3d Cir. 1997) (citing *Whiteley*, 401 U.S. at 568).
[72] *Id.*
[73] *Id.* (quoting *United States v. Hensley*, 469 U.S. 221, 231 (1985)).
[74] *See* Bell and Gardner MTD Br., Doc 46 at 8 ("Officers Bell and Gardner properly relied upon Detective Dent's information that Mr. Sumter purchased drugs from Plaintiff. Detective Dent supplied Bell and Gardner with the "facts and circumstances" necessary to support his finding of probable cause to arrest Plaintiff.").

14

immunity."[75] To determine if an officer is qualifiedly immune a court must determine whether "the officer's conduct violated a constitutional right" and whether "the right that was violated was clearly established."[76]

The Court has already determined that the SAC adequately pleads a Fourth Amendment violation—arrest without probable cause. "Accordingly, [D]efendants are entitled to qualified immunity here 'if a reasonable officer could have believed that probable cause existed' to arrest [Barasky] 'in light of clearly established law and the information the [arresting] officers possessed.'"[77] Defendants have the burden to establish that they are entitled to qualified immunity, in this case, to show that the rights at issue were not clearly established.[78]

Defendants' arguments in favor of their immunity largely overlap with their arguments that they had probable cause—which the Court has already rejected. "[T]here is no question that . . . the right to be free from arrest except on probable cause, was clearly established" before Barasky's 2020 arrest.[79] As was the right to be free from an arrest based entirely upon the word of another officer who did not have probable cause, to the extent that is the particular right at issue.[80] Accordingly,

---

[75] *Curley v. Klem*, 499 F.3d 199, 206 (3d Cir. 2007).
[76] *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).
[77] *Blaylock v. City of Philadelphia*, 504 F.3d 405, 411 (3d Cir. 2007) (quoting *Hunter v. Bryant*, 502 U.S. 224, 228-29 (1991); *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).
[78] *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004).
[79] *Andrews v. Scuilli*, 853 F.3d 690, 705 (3d Cir. 2017) (quoting *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995)).
[80] *See Rogers*, 120 F.3d at 453 (citing *Whiteley*, 401 U.S. at 568).

the Court concludes that Defendants violated Barasky's clearly established constitutional rights and are not entitled to qualified immunity.

B.  **Civil Conspiracy**

Defendants last challenge the adequacy of Count III, in which Barasky alleges that all Defendants engaged in a conspiracy to violate his constitutional rights. Again, Defendants rather generally argue that Barasky's allegations fall short of Rule 8's pleading standard. And again, the Court disagrees.

The elements of a claim of conspiracy to violate federal civil rights are that (1) "two or more persons conspire to deprive any person of [constitutional rights]"; (2) "one or more of the conspirators performs . . . any overt act in furtherance of the conspiracy"; and (3) "'that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States,' with the added gloss under § 1983 that 'the conspirators act under the color of state law.'"[81] Here, Barasky satisfactory alleges that the object of Defendants' conspiracy was to arrest him without probable cause in violation of his constitutional rights.[82]

After a plaintiff establishes that the object of the conspiracy was the deprivation of a federally protected right, "'the rule is clear that' the plaintiff 'must

---

[81] *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294 n.15 (3d Cir. 2018) (quoting *Barnes Foundation v. Township of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001)). There is no dispute that Defendants were acting under color of state law when they arrested Barasky.

[82] Defendants did not necessarily have to subjectively intend to arrest Barasky without probable cause. The Court has already concluded that no reasonable officer in any of Defendants' places would have believed that he or she had probable cause.

provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action.'"[83] "To show agreement, [the plaintiff] must demonstrate that 'the state actors named as defendants in the[] complaint somehow reached an understanding to deny [the plaintiff] his rights.'"[84] "[I]n the absence of direct proof, that 'meeting of the minds' or 'understanding or agreement to conspire'" necessary to sustain a conspiracy "can be 'infer[red]' from circumstantial evidence."[85] "Such circumstantial evidence may include that the alleged conspirators 'did or said something . . . to create an understanding,' "the approximate time when the agreement was made, the specific parties to the agreement[,] the period of the conspiracy, or the object of the conspiracy."[86]

Barasky argues that the alleged "agreement" to violate his rights occurred when Defendants met to plan the traffic stop on October 2, 2020.[87] The Court agrees. At that point, Defendants knew or reasonably should have known that they did not have probable cause. But they proceeded to position themselves to intercept Barasky anyway. After stopping and searching him, they arrested him. As detailed above, each Defendant played some role in Barasky's arrest and therefore undertook an overt act in furtherance of the conspiracy to violate his rights. Accordingly, the Court

---

[83] *Id.* (quoting *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 184-85 (3d Cir. 2009)).
[84] *Id.* (quoting *Kost v. Kozakiewicz*, 1 F.3d 176, 185 (3d Cir. 1993) (alterations in original)).
[85] *Id.* (quoting *Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008) (alterations in original)).
[86] *Id.* (quoting *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178-79 (3d Cir. 2010))
[87] Barasky Opp. Br., Doc. 50 at 14-15.

concludes that Barasky has adequately pled a claim for a conspiracy to violate his constitutional rights.

## IV. CONCLUSION

None of the above is to say that Defendants' actions were definitively unjustified. As countless courts have stressed countless times, determining probable cause—which sits at the heart of this case—is an intensely factual inquiry. The pleading stage is not a good one for resolving such inquiries. Defendants are welcome to renew their arguments after discovery, but their motions to dismiss are denied.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge