IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Anthony Barasky, | : | CIVIL ACTION LAW |
|                Plaintiff, | : | JURY TRIAL DEMANDED |
| vs. | : | |
| | : | Judge Karoline Mehalchick |
| Kevin Dent, Tyson Havens, | : | Electronically Filed |
| Joshua Bell, Clinton Gardner, and | : | |
| Joseph Hope, | : | |
| | : | |
|               Defendants | : | Docket #: 4:21 CV 02041 |

**JOINT STATEMENT OF MATERIAL FACTS
FILED ON BEHALF OF DEFENDANTS**

NOW COMES, the Defendants, jointly, by and through their undersigned counsel, and present the following material facts in support of their Motions for Summary Judgment:

1. At all times relevant hereto, Defendant Dent was a detective employed by Lycoming County Narcotics Enforcement Unit.

2. At all times relevant hereto, Defendant Havens was a detective employed by the Lycoming County with the Narcotics Enforcement Unit. Havens Trx p. 5-6 attached hereto and marked as Exhibit "A."

3. At all times relevant hereto, Defendant Bell was employed by the City of Williamsport but specially assigned to the Lycoming County Narcotics Enforcement Unit. Dent Trx 7:20-24 attached hereto and marked as Exhibit "B;" Bell Trx p. 5 attached hereto and marked as Exhibit "C."

4. At all times relevant hereto, Defendant Gardner was employed by the City of Williamsport but specially assigned to the Lycoming County Narcotics Enforcement Unit. Gardner Trx p. 5-7 attached hereto and marked as Exhibit "D."

5. At all times relevant hereto, Defendant Hope was the chief of the Old Lycoming Township Police Department. Hope Trx 5:10-16 attached hereto and marked as Exhibit "E."

6. Defendant Dent secured a search warrant for Matthew Sumpter's residence on September 24, 2020 based upon information from a confidential informant that Sumpter possessed a quantity of Fentanyl that he intended to sell. Dent Trx p. 11 (Ex. B); NEU Report for Case #20-03528 attached hereto and marked as Exhibit "F."

7. When the warrant was executed, members of the NEU would have been present to assist. Dent Trx p. 12 (Ex. B).

8. Old Lycoming Township officers would have been present just for a uniform presence. Dent Trx p. 12 (Ex. B).

9. Old Lycoming Township officers would not have gone into the house. Dent Trx p. 12-13 (Ex. B).

10. Defendant Dent interviewed Sumpter on September 24, 2020. Dent Trx P. 12 (Ex. B).

11. No other defendants were present during that interview. Havens Trx p. 21-22 (Ex. B); Bell Trx p. 10 (Ex. A).

12. During the interview, Sumpter told Defendant Dent that he gets the Fentanyl from Plaintiff and that he could call Plaintiff at any time to meet him shortly thereafter to purchase Fentanyl. NEU Report for Case #20-03528 (Ex. F).

13. Officers recovered Fentanyl and marijuana from Sumpter's residence. NEU Report for Case #20-03528 (Ex. F).

14. Sumpter was released that day without charges with the intent of him cooperating as a confidential informant. Dent Trx p. 15 (Ex. B).

15. Sumpter had several telephone conversations with Detective Dent between September 24, 2020 and October 2, 2020. Dent Trx. p. 20 (Ex. B).

16. In their last conversation, Sumpter had indicated that he wanted to take his charges and go to rehab. Dent Trx p. 20 (Ex. B).

17. Defendant Dent then secured an arrest warrant for Sumpter. Dent Trx p. 20 (Ex B).

18. A criminal complaint was filed against Sumpter for a 4/15/20 delivery of Suboxone to a confidential informant, criminal use of a communication facility from the 4/15/20 interaction, and possession related to the Fentanyl seized as a result of the 9/24/20 search warrant. Police Criminal Complaint for Sumpter attached hereto and marked as Exhibit "G."

19. On October 2, 2020, Defendant Dent intended to arrest Sumpter for those charges. NEU Report for Case #20-10100 attached hereto and marked as Exhibit "H."

20. Prior to executing the arrest warrant, in anticipation of Sumpter wanting to cooperate upon his arrest, there would have been a meeting at the NEU where the plan was developed that they would plan to have Sumpter set up a drug buy from Plaintiff and the officers would stop Plaintiff enroute to the buy location given his history of fleeing and the residential and secluded nature of the buy location. Dent Trx p. 24-28 (Ex. B) ; Bell Trx p. 19 (Ex. C).

21. Plaintiff had fled from Defendant Havens in 2007. After Havens traffic stopped him he was arrest for traffic violations and was found to be in possession of marijuana and a large amount of cash. Havens Trx p. 16 (Ex. A); March 24, 2007 Incident Report authored by Tyson Havens attached hereto and marked as Exhibit "I."

22. Defendant Havens arrested Plaintiff again in 2016 after he led officers on a dangerous high speed pursuit that ended with Plaintiff crashing through a K-Mart wall and then fleeing on foot leaving multiple bags of drugs in his flight path. Havens Trx p. 17-21 (Ex. A); September 19, 2016 Incident Report authored by Tyson Havens attached hereto and marked as Exhibit "J."

23. In connection with that 2016 arrest, police found a block of double-sealed heroin hidden within Plaintiff's vehicle, with individual heroin bags stamped the same way as those that were recovered from the flight path. Havens Trx p. 20 (Ex. A).

24. Once the arrest warrant was executed by Dent, Sumpter changed his mind and indicated he wanted to cooperate. Dent Trx. p. 20 (Ex. B).

25. Sumpter was made a confidential source as opposed to a confidential informant. Dent Trx p. 21 (Ex. B).

26. As a confidential source, Sumpter would not handle any drugs. Dent Trx. p. 22 (Ex. B).

27. This was the first time Sumpter was used as a confidential source. Dent Trx p. 22:11-13 (Ex. B).

28. The facts that Defendant Dent considered in his analysis that Sumpter was a reliable source were:

   a. Prior knowledge of Sumpter being just a user;

   b. Selling Suboxone indicate he was not a big-time dealer.

   c. Rather he was selling a prescription to get money so he could go and buy drugs for himself.

   d. Plaintiff was a known drug dealer.

   e. Sumpter placed a text to the person he identified as Plaintiff and immediately got a response.

   f. The text exchange was for the purchase of drugs.

Dent Trx 97-99 (Ex. B).

29. The NEU asked Old Lycoming Township officers to assist with the plan as Sumpter's house, and the proposed traffic stop location, was in their jurisdiction. Bell Trx p.22-24 (Ex. C).

30. On October 2, 2020, there was a briefing at the Old Lycoming Township police station. Dent Trx. 25-28 (Ex. B); Bell Trx 24-33 (Ex. C).

31. Defendant Dent was the lead investigator even though Defendant Bell led the briefing. Hope Dep. Trx p. 17 (Ex. E); Bell Trx 28 (Ex. C); Gardner Trx p. 18 and p. 40 (Ex. D).

32. The plan to stop Plaintiff prior to arriving at the buy location due to the flee risk would have been discussed. Havens Trx p. 23-26 (Ex. A); Hope Trx p. 15 (Ex. E); Bell Trx 24-33 (Ex. C); Havens interrogatory answers #10-11 attached hereto and marked as Exhibit "K;" Bell interrogatory answers #10-11 attached hereto and marked as Exhibit "L;" Gardner interrogatory answers #10-11 attached hereto and marked as Exhibit "M."

33. Although Defendant Bell was a coordinator or supervisor of the others, he did not necessarily delegate jobs for the instant arrest. Havens Trx 28 (Ex. A).

34. Sumpter texted a number he indicated belonged to Plaintiff (215-301-0606) to purchase Fentanyl. NEU Report for Case #20-10100 (Ex. H); Texts attached hereto and marked as Exhibit "N."

35. Sumpter kept Plaintiff in his phone as "Plug." Texts (Ex. N) ; Dent Trx p. 36 (Ex. B).

36. Sumpter received a phone call from a number he indicated belonged to Plaintiff (215-301-0606) when Plaintiff was on his way and when he was close by so that Sumpter could "head out." NEU Report for Case #20-10100 (Ex. H).

37. One minute later Defendant Bell relayed that he had a visual of Plaintiff driving on Eckard Road. NEU Report for Case #20-10100 (Ex. H).

38. The unmarked vehicle driven by Defendant Bell with Defendant Gardner as a passenger and the marked vehicle driven by Defendant Hope got behind Plaintiff and turned on their lights and sirens. Bell Trx p. 36-38 (Ex. C).

39. Plaintiff was stopped and taken into custody at the intersection of Eckard Road and Miller Road (road leading into the housing development where Sumpter lived). NEU Report for Case #20-10100 (Ex. H).

40. Upon the vehicle being stopped, Defendant Havens opened Plaintiff's car door and removed him from the vehicle, placed him under arrest, and advised him of his Miranda rights. Havens Dep Trx 32-33 (Ex. A); Hope Trx p. 33-34 (Ex. E).

41. The vehicle he was driving was towed and placed in impound. NEU Report for Case #20-10100 (Ex. H).

42. Defendant Dent called the number which Sumpter indicated belonged to Plaintiff (215-301-0606) and the phone that was recovered from Plaintiff rang displaying Defendant Dent's phone number. NEU Report for Case #20-10100 (Ex. H); Dent Trx p. 118-120 (Ex. B); Havens Trx 42-43 (Ex. A).

43. Plaintiff was strip searched by Defendants Bell and Gardner on the date of his arrest and no contraband was found. Bell Trx p. 45-46 (Ex. C).

44. Defendant Bell requested that Plaintiff be placed in a dry cell at the Lycoming County Prison so that anything he would dispense from his body could not be disposed of. NEU Report for Case #20-10100 (Ex. H); Bell Trx p. 46-47 (Ex. C).

45. On October 2, 2020, Defendant Dent filed a criminal complaint charging Plaintiff with criminal use of a communication facility. Criminal Complaint 20-10100 attached hereto and marked as Exhibit "O;" Dent Trx p. 71 (ex. B).

46. The charges were approved by District Attorney, Ryan Gardner. Dent Trx p. 102 (Ex. B).

47. Defendant Dent told DA Gardner that no drugs were found. Dent Trx. p. 112 (Ex. B).

48. Defendant Dent instructed the officer that covered the arraignment to tell the judge he recommended secure bail. Dent Trx p. 76 (Ex. B).

49. Bail was set at $85,000 and he was remanded to the Lycoming County Prison. NEU Report for Case #20-10100 (Ex. H).

50. But, it was the judge that ultimately set the bail. Dent Trx p. 102 (Ex. B).

51. On October 6, 2020, the Lycoming County Prison notified Defendant Dent that no contraband was recovered from Plaintiff's cell. NEU Report for Case #20-10100 (Ex. H).

52. Thereafter, Defendant Dent applied for a search warrant of the vehicle that Plaintiff was driving at the time of his arrest. NEU Report for Case #20-10100 (Ex. H).

53. No contraband was discovered from the search of the vehicle. NEU Report for Case #20-10100 (Ex. H).

54. Defendant Bell did not have any involvement in the case after asking Lycoming County Prison to place Plaintiff in a dry cell. Dent Trx p. 80 (Ex. B); Bell Trx p. 48 (Ex. C).

55. Defendant Havens did not have any involvement in the case after the arrest aside from court testimony. Dent Trx. p. 80 (Ex. B).

56. Defendant Hope did not have any involvement in the case after the arrest of Plaintiff. Dent Trx p. 80-81 (Ex. B); Hope Trx p. 36 (Ex. E).

57. Defendant Gardner did not have any involvement in the case after the date of his arrest. Dent Trx p. 81 (Ex. B); Gardner Trx p. 29 (Ex. D).

58. The charge of criminal use of a communication facility filed against Plaintiff was ultimately dismissed by Judge Butts. Dent Trx p. 81 (Ex. B); Opinion attached hereto and marked as Exhibit "P."

59. The cell phone that was taken from Plaintiff during the arrest (the one that Defendant Dent called and displayed his own cell phone number) was given back to Plaintiff. Plaintiff Deposition Trx p. 68 attached hereto and marked as Exhibit "Q."

60. Thereafter, Plaintiff gave that cell phone to his son to use. Plaintiff's Initial Disclosures attached hereto and marked as Exhibit "R."

61. Defendant Dent was the case officer for the case against Plaintiff. Dent Trx. 89 (Ex. B).

62. Within the present litigation, at his deposition Plaintiff asserted his Fifth Amendment right with regard to the following questions at his deposition:

a. Did you have your own vehicle at the time of this incident? [p. 33-34]

b. Where you just immediately prior to the arrest? [p. 55]

c. Had you stopped anywhere on Lycoming Creek Road prior to being pulled over? [p. 56]

d. Had you talked to Matthew Sumpter that day? [p. 56]

e. On that day, had you had any texts with Matthew Sumpter? [p. 56-57]

f. And did you know Matthew Sumpter? [p. 57]

g. Do you know that housing development? [asking about the housing development where Sumpter lived] [p. 58]

h. Had you been to that housing development, that residential area, prior to October 2, 2020? [ p. 58-59]

i. And do you know that that is the neighborhood where Matthew Sumpter lives? [p. 59]

j. On the day you were pulled over, were you going to meet with Matthew Sumpter? [p. 59]

k. Did you have drugs with you on the date of October 2, 2020 when you got arrested? [p. 59-60]

l. Just prior to your arrest did you have drugs in the vehicle or on you on October 2, 2020? [p. 60]

m. Did you have any drugs hidden within the vehicle at the time of your arrest on October 2, 2020? [p. 60]

n.  Just prior to your arrest, when you noticed that there was an unmarked vehicle – unmarked police vehicle behind you, did you dispose of any drugs out the window? [p. 60-61]

o.  At the point when you realized that you were going to be pulled over, did you in any way hide or ingest – hide within your body or ingest any drugs? [p. 61]

p.  Have you ever had the cell phone number 215-301-0606? [p. 67]

q.  What kind of phone did you have at that time? [67-68]

r.  This is a photograph of a cell phone that's been produce din discovery by the county indicated to be a phone that was taken not custody by the police at the time of or just after your arrest.  Is that the phone that you had on you the day of your arrest that we're here about?  [p. 74-75]

s.  Do you know what the name Plug means? [p. 75]

t.  Do you recall receiving that text that day from Sumpter?  [asked about "got your bread, bro, plus money three"] [p. 76]

u.  Do you know what "got your bread" means? [p. 76-77]

v.  Do you know what "plus money three" means? [p. 77]

w.  Is that somebody asking for additional three grams? [p. 77]

x.  Did Matthew Sumpter owe you money? [p. 77]

y.  On the day you were arrested, were you going to meet Matthew Sumpter to get money from him? [p. 77-78]

z. Going through the different pages of the text messages are these text messages that are between you and Matthew Sumpter on different dates? [p. 78]

aa. When you were driving down Eckard Road, did you turn right onto Miller Road? [p. 135]

bb. Who did Mr. Sumpter contact by telephone that day to purchase heroin? [p. 136]

cc. What were Mr. Sumpter's uncorroborated and false accusations? [p. 136-137]

dd. On 10/22/20 did you speak with Mr. Sumpter on the phone? [p. 137]

ee. On 10/2/20 did you agree to sell Mr. Sumpter 3 grams of Fentanyl? [p. 137-138]

ff. Prior to 10/2/20 had you ever sold Fentanyl to Mr. Sumpter? [p. 138]

gg. Where would your vehicle have traveled had it not been stopped by the officers? [p. 141]

hh. What statements of Mr. Sumpter was proven false? [p. 142]

ii. Have you ever sold Fentanyl to anyone before? [p. 150]

jj. If Matthew Sumpter had told police that you had sold him Fentanyl about a hundred times, is that true? [p. 151]

Plaintiff Trx (Ex. Q).

**McCORMICK LAW FIRM**
BY:/s/ Austin White, Esquire
    Austin White, Esquire
    835 West Fourth Street
    Williamsport, PA 17701
    Atty I.D. No. 312789
    (570)326-5131
    awhite@mcclaw.com
    ***Attorney for Defendants Kevin Dent and Tyson Havens***

**WILLIAM J. FERREN & ASSOCIATES**
BY: /s/ Shawna R. Laughlin
    Shawna R. Laughlin, Esquire
    P.O. Box 2903
    Hartford, CT 06106-2903
    Atty I.D. No.: 209987
    (570)343-6570
    slaughli@travelers.com
    ***Attorney for Defendants Joshua Bell and Clinton Gardner***

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**
BY:/s/ Mark J. Kozlowski
    Mark J. Kozlowski, Esquire
    Attorney I.D. No.: 308676
    P.O. Box 3118
    Scranton, PA 18505-3118
    (570) 496-4600
    mjkozlowski@mdwcg.com
    ***Attorney for Defendant Joseph Hope***