# EXHIBIT P

IN THE COURT OF COMMON PLEAS OF LYCOMING COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | |
| | : | CP-41-CR-1357-2020 |
| v. | : | |
| | : | |
| ANTHONY BARASKY, | : | OMNIBUS MOTION |
| Defendant | : | |

**OPINION AND ORDER**

Anthony Barasky (Defendant) was charged on October 2, 2020 with one (1) count of Criminal Use of a Communication Facility[1]. The charge arises from police conducting a traffic stop of Defendant's car after the setup of a controlled purchase of suspected narcotics between a confidential informant and Defendant. Defendant filed this Omnibus Pretrial Motion on November 30, 2020. This Court held a hearing on the motion on February 9, 2021. In his Omnibus motion, Defendant first argues that the Commonwealth has not provided sufficient evidence to satisfy the *prima facie* burden at the preliminary hearing and the charge should be dismissed. Secondly, Defendant argues that the search police conducted of a phone was illegal and any identification of the phone or information obtained as a result of the illegal search should be suppressed. Thirdly, Defendant argues the stop of Defendant's vehicle was illegal and any evidence found because of the stop should also be suppressed. Fourth, Defendant argues that no probable cause existed to support his arrest and thus, all evidence obtained as a result of the arrest should be suppressed. Fifth, Defendant argues to suppress all records of Defendant's prison phone calls and messages as fruit of the poisonous tree. Lastly, Defendant submits a motion in limine requesting the Court to prohibit the Commonwealth from using any of Defendant's prior convictions at trial[2].

---

[1] 18 Pa.C.S. § 7512(a).
[2] The parties have agreed to address the motions in limine closer to trial.

**Background and Testimony**

At the preliminary hearing, Detective Kevin Dent (Dent) of the Lycoming County Narcotics Enforcement Unit (NEU) testified on behalf of the Commonwealth. Dent testified that he had arrested an individual and that they had indicated an interest in wanting to work with law enforcement as a confidential informant (CI) following that arrest. N.T. 10/14/2020, at 9. Police agreed to work with them in this role as a CI. Id. The CI indicated that they had previously purchased drugs from Defendant "approximately 100 times in the past." Id. The CI was supposed to contact Defendant to set up a controlled purchase of fentanyl to assist law enforcement in Defendant's arrest. Id. at 9, 11. On October 2, 2020, the CI contacted Defendant through their cell phone by calling and texting the number they claimed they had for Defendant. Id. at 10. Dent testified that he was present during all calls and text messages sent to Defendant by the CI. Id. During the two (2) phone calls that occurred, the CI kept Defendant on speakerphone so Dent could hear the entirety of their conversation. Id. at 16. However, Dent admitted that he was not familiar with the sound of Defendant's voice at that time. Id. at 11. The CI requested to buy three (3) grams of fentanyl from Defendant. Id. Dent testified that the amount of fentanyl would go for approximately seventy (70) dollars per gram but did not confirm whether the CI and Defendant actually agreed on a price. Id. at 10. Defendant agreed to the transaction. Id. Defendant and the CI had a "known point" where they would meet up to conduct their drug transactions. Id. at 11. The two agreed to meet at that same location. Id. Dent stated that the operation was to stop Defendant "en route to the deal and arrest him." Id. at 12. Dent testified that, instead of moving to the agreed upon location to apprehend Defendant, he remained with the CI. Id. Defendant called the CI to notify them that he was almost there. Id. at 16. Other officers from the NEU and the Old Lycoming Township Police stopped Defendant at

2

a location consistent with traveling in the direction of the meet up location. Id. at 12. Dent was not aware if there was a traffic violation that enabled the officers on scene to pull Defendant's vehicle over. Id. at 17. While Dent stayed with the CI, he remained in contact with officers on the scene during Defendant's apprehension. Id. at 13. Police conducted a search of Defendant and no fentanyl was discovered on his person or in his vehicle. Id. However, officers recovered a cellular phone, though Dent was not sure where the phone was recovered. Id. Following the discovery of the phone, Dent made a call from his work phone number to the cell phone recovered from Defendant. Id. at 13, 17. Detective Havens was in the presence of the phone when it rang and saw that it displayed Dent's work phone number. Id. at 13. Detective Havens took a picture of Defendant's illuminated phone receiving a call from Dent. Id.

      Matthew Sumpter (Sumpter), the CI in this case, Detective Tyson Havens (Havens) of the Pennsylvania State Police Department, and Dent testified at the hearing on this motion on February 9, 2021. Sumpter testified that he had been charged in 2020 with delivery of drugs. He approached Dent with the suggestion that he set up Defendant with a controlled purchase. Sumpter testified that police did not make any promises to him regarding the 2020 charges. Sumpter's testimony affirmed Dent's preliminary hearing testimony. The Commonwealth submitted a photograph of a portion of Sumpter and Defendant's text exchanges as displayed on Sumpter's phone. Sumpter stated that the meet up location for the controlled buy was supposed to be in front of his house as they had done in the past. Sumpter testified that he was hoping for favorable treatment after cooperating with police. He also indicated that he had gotten high earlier that day before working with the police. Dent testified that Defendant had fled from police before so the plan was to not permit him to make contact with Sumpter. Dent also testified that Defendant was pulled over in front of Sumpter's housing development. This

3

development only had one (1) entrance and one (1) exit. Havens testified that his role was to set up surveillance and assist taking Defendant into custody. Havens noted that he was the individual who obtained Defendant's cell phone off his person. Havens told Dent to call the phone, watched it ring, and took a photo of the Defendant's phone during Dent's call.

**Discussion**

*Suppression Motions*

The Court first addresses Defendant's suppression motions. Defendant argues that the phone search, the traffic stop, and the arrest were a violation of his rights and therefore, evidence seized by police from all three incidents must be suppressed. The Fourth Amendment to the United States Constitution and Article 1 Section 8 of the Pennsylvania Constitution protect citizens against unreasonable searches and seizures. U.S. Const. amend. IV; PA Const. art. 1, § 8. Warrantless searches are unreasonable per se, "subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967). The most applicable exception to the warrant requirement in this case is when a warrantless search is conducted incident to a lawful arrest. Therefore, our initial inquiry in the case *sub judice* is to determine whether the warrantless arrest of Defendant was lawful. To be constitutionally valid, "a warrantless arrest must be supported by probable cause." In Interest of O.A., 717 A.2d 490, 495 (Pa. 1998); See Commonwealth v. Barnett, 398 A.2d 1019 (Pa. 1979). "Where probable cause to arrest does not exist in the first instance, any evidence seized in a search incident to arrest must be suppressed. It is well settled that in determining whether probable cause exists to justify a warrantless arrest, the totality of the circumstances must be considered." Id.; See Illinois v. Gates, 462 U.S. 213 (1983); Commonwealth v. Gray, 503 A.2d 921 (Pa. 1985). Under this test, "[p]robable cause exists where the facts and circumstances

4

within the officers' knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed." Commonwealth v. Gibson, 638 A.2d 203, 206 (Pa. 1994). "Suspicion is not a substitute for probable cause to conduct a valid search and seizure." Id. All relevant facts are considered in deciding whether the warrantless arrest was justified by probable cause. In Interest of O.A., 717 A.2d at 495. "Where, as here, the officers' actions resulted from information gleaned from an informant, in determining whether there was probable cause, the informant's veracity, reliability and basis of knowledge must be assessed." Id.

Defendant challenges his arrest by law enforcement arguing that the police did not have any probable cause to justify the arrest. He argues that the police did not find any narcotics in the vehicle or on his person. Defendant also asserts that law enforcement used an unreliable CI and did not establish that Defendant was on the other end of the phone conversations with said CI. In the case In Interest of O.A., the Pennsylvania Supreme Court was presented with a situation in which the police used a CI in an attempt to arrest individuals selling drugs. In Interest of O.A., 717 A.2d 490, 493 (Pa. 1998). This particular CI had "previously provided information leading to approximately fifty arrests." Id. The police made a warrantless arrest based on the information from the CI and the Court held that the "blanket assertion by the police officer as to the informant's reliability with no objective facts lending credibility to the assertion" was not enough to establish probable cause justifying a warrantless arrest. Id. at 496. Furthermore, the Court held that "the tip in this case does not disclose a sufficient basis of knowledge to support the police officers' belief that a crime had been or was being committed at the time…The only assertion that the informant made relevant to his basis of knowledge was that he observed drugs for sale in Appellant's possession in an abandoned garage." Id.

5

However, "[c]orroboration of the details of an informant's tip with independent police work can provide sufficient indicia of reliability to an otherwise unreliable tip." Id. at 497; *See* Illinois v. Gates, 462 U.S. 213, 241 (1983).

For the following reasons, this Court agrees with Defendant on this issue. The CI in this case had never been used in that capacity before by law enforcement. The only "tip" he stated to police was that he had apparently purchased drugs from Defendant in the past and then assisted the police in setting up the drug transaction for the police with an individual that Dent could not identify based on that phone conversation. No other facts or corroboration was presented to the Court in order to substantiate the CI's information other than Dent's blanket testimony that he was "aware of" Defendant prior to his arrest in this case and that members of the NEU had dealt with Defendant before. N.T. 10/14/2020, at 6. This statement provides no specific connections between Defendant and the CI indicating that Defendant would be willing to sell narcotics to the CI or that Defendant had drugs to sell. Therefore, all evidence, including the phone, that was seized as a result of Defendant's arrest shall be suppressed.

Secondly, Defendant argues that the traffic stop of Defendant had no identifiable traffic violation or sufficient probable cause to support law enforcement effectuating the stop of Defendant. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a seizure…within the meaning of this provision." Whren v. U.S., 517 U.S. 806, 809 (1996) (internal quotations omitted). The stop of an automobile "is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." Id. at 810. "As a general matter, the decision to

stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Id.; *See* Pennsylvania v. Mimms, 434 U.S. 106, 109 (1977). "For a stop based on the observed violation of the Vehicle Code or otherwise non-investigable offense, an officer must have probable cause to make a constitutional vehicle stop." Commonwealth v. Harris, 176 A.3d 1009, 1019 (Pa. Super. 2017). "Pennsylvania law makes clear that a police officer has probable cause to stop a motor vehicle if the officer observes a traffic code violation, even if it is a minor offense." Id. Defendant states that he was not charged with any traffic violation nor was any violation included in the information. Neither Dent nor Havens testified to any identifiable traffic violation that would give rise to sufficient probable cause for law enforcement to pull Defendant over on the day in question. Since there was no traffic violation, Defendant asserts that police needed to have probable cause before conducting the stop.

Defendant argues that the only support for pulling him over came from Sumpter, the CI in this case. Defendant believes that the CI was unreliable because the police had never worked with this CI before in their undercover investigations and the CI had motive to lie in order to better his chances of law enforcement offering him a deal after his arrest. Since the Court has already found that the CI's tip was not sufficient to establish probable cause and that is the only evidence leading to the stop of Defendant's car, the traffic stop was also unconstitutional and the evidence seized shall be suppressed.

Furthermore, Defendant challenges the search of the phone by police. "The police generally may not, without a warrant, search digital information on a cell phone seized from an

7

individual who has been arrested." Riley v. California and United States v. Wurie, 573 U.S. 373 (2014) (hereinafter "Riley/Wurie".) Chimel v. California established what police can reasonably search incident to arrest and held that officers may search the arrested individual to remove any weapons to protect officer safety, to search and seize evidence on their person to prevent concealment or destruction, and to search the area within the arrestee's immediate control to further those objectives of a warrantless search. Chimel v. California, 395 U.S. 752, 762-63 (1969); *See also* United States v. Robinson, 414 U.S. 218 (1973) (lawful to search the person of an individual incident to their arrest); Arizona v. Gant, 556 U.S. 332 (2009) (exception for warrantless search of a vehicle's passenger compartment when reasonable to believe evidence relevant to the crime may be found in the vehicle). In Riley/Wurie, two (2) cases were consolidated in order to answer the shared question of whether police can search the digital information on a cell phone without a warrant from an individual who has been arrested. Id. at 378. In the first case, police arrested Riley and seized his smartphone incident to his arrest. Id. "The officer accessed information on the phone and noticed that some words (presumably in text messages or a contacts list) were preceded by…a slang term for members of the Bloods gang." Id. at 379. Later at the police station, another detective specializing in gangs also examined the contents of the phone looking for evidence and found Riley in front of a vehicle that was suspected to be involved in a shooting several weeks prior. Id. The information found on the phone was used against Riley at trial and admitted into evidence. Id. In the second case, an officer watched Wurie make what appeared to be a drug sale while doing routine surveillance. Id. Wurie was arrested and taken to the police station where a flip phone was seized from his person. Id. at 380. "[T]he officers noticed that the phone was repeatedly receiving calls from a source identified as 'my house' on the phone's external screen." Id. They

pressed buttons to gain access to the phone's call log and to determine the number associated with the contact name. Id. The police used the information gathered from the phone to further develop their investigation into Wurie. Id. The Supreme Court noted that the dangers and concerns articulated in Chimel are not present in the search of digital content on cell phones, noting that "[c]ell phones…place vast quantities of personal information literally in the hands of individuals. A search of the information on a cell phone bears little resemblance to the type of brief physical search considered in Robinson." Id. 386. In Commonwealth v. Fulton, the police arrested the defendant and seized his cell phone. Commonwealth v. Fulton, 179 A.3d 475, 479 (Pa. 2018). After seizing the phones, police opened them, turned them on, and searched the menu to figure out the number assigned to the phone. Id. at 480. Additionally, an officer left one of the phones on and monitored its incoming calls and texts, even going so far as to answer a call. Id. The Pennsylvania Supreme Court found that law enforcement's conduct of the phones was contrary to Riley/Wurie's holding that "any search" of a phone required a warrant and was therefore a violation of defendant's rights. Id. at 487.

   Defendant argues that the police powered on the phone recovered from Defendant when Dent placed a call to the number from his work phone. Defendant further avers that police manually turned the phone on by pressing a button. It is Defendant's belief that any interference or manipulation of the phone by the police is a search and requires a warrant. Since law enforcement did not have a search warrant for the phone, the evidence obtained as a result of the illegal search must be suppressed. The Commonwealth responds that the case law on this issue did not overrule or otherwise change the plain view exception to the warrant requirement. Additionally, the Commonwealth believes that Fulton addresses the issue of police turning a phone on that was off as prohibited manipulation by police of a civilian's cellular phone. In this

9

case, the Commonwealth argues that there is a significant difference between lighting up a phone screen and powering on a phone. Since the former is what police did in this case, it does not qualify as a search because police only observed the outside of the phone and took a picture of the screen while the phone was receiving a call from another officer.

The Court disagrees with the Commonwealth on this issue. The Supreme Court has held that, to qualify as a search, the police's conduct does not need to uncover something of "great personal value." Arizona v. Hicks, 480 U.S. 321, 325 (1987). "[E]ven a small, seemingly insignificant act of information gathering by police in a constitutionally protected area is a search." Commonwealth v. Fulton, 179 A.3d 475, 488 (Pa. 2018). In this case, Dent and Havens' clear objective was to gather more evidence for their investigation against Defendant. The Commonwealth's argument that their conduct of merely calling the phone did not amount to a search because they did not turn the phone on is without merit following a review of the law on this subject. Through their actions, police were able to obtain more information about the phone and Defendant than they would have without a warrant. Even though the phone was in plain view of police after it was seized, Dent manipulated the phone by calling it. In fact, the Court in Fulton held that police conducted three (3) separate searches of the phone, one of which was when the officer "monitored incoming calls and text messages." Fulton, 179 A.3d at 489. Therefore, we find that Defendant's argument on this issue is valid and the evidence seized must be suppressed.

Lastly, Defendant wishes to suppress all prison phone calls and messages obtained by the Commonwealth in this case as fruit of the poisonous tree. The United States Supreme Court held that "evidence constitutes poisonous fruit, and, thus, must be suppressed, if, 'granting establishment of the primary illegality, the evidence to which instant objection is made has

10

been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Commonwealth v. Shabezz, 166 A.3d 278, 289 (Pa. 2017) (quoting Wong Sun v. United States, 371 U.S. 471, 488 (1963). "The fruit of the poisonous tree doctrine excludes evidence obtained from, or acquired as a consequence of, lawless official acts; it does not exclude evidence obtained from an independent source." Commonwealth v. Brown, 700 A.2d 1310, 1318 (Pa. Super. 1997) (internal quotations omitted); *See* Commonwealth v. Ariondo, 580 A.2d 341, 347 (Pa. Super. 1990). "The burden rests on the Commonwealth to demonstrate that the secondary evidence was gathered by means sufficiently distinguishable from any illegality so as to be 'purged of its primary taint' rather than deriving from exploitation of the illegality." Id. at 1319; *See* Wong Sun, 371 U.S. at 488.

Defendant argues that the only reason the Commonwealth obtained recordings of Defendant's prison phone calls and messages is because of the illegal traffic stop, illegal arrest, and illegal searches of the phone as performed by police. Defendant believes that the prison calls and messages could not have been discovered by means free of the primary taint of the illegal conduct of law enforcement in this case. As previously discussed, the Court agrees with Defendant's arguments as to the illegality of the traffic stop, the arrest, and the phone search. Additionally, the Commonwealth has not presented additional evidence to show that the phone records from prison were independently discovered without the evidence obtained from Defendant's arrest. Therefore, the phone calls and messages from Defendant attributable to Defendant must also be suppressed as fruit of the poisonous tree. However, even in the alternative if it is found that the Commonwealth presented enough to establish probable cause in the instances discussed above, this Court finds, as discussed below, that the Commonwealth failed to establish their *prima facie* burden and dismisses the charge against Defendant.

*Habeas Corpus Motion*

At the preliminary hearing stage of a criminal prosecution, the Commonwealth need not prove a defendant's guilt beyond a reasonable doubt, but rather, must merely put forth sufficient evidence to establish a *prima facie* case of guilt. Commonwealth v. McBride, 595 A.2d 589, 591 (Pa. 1991). A *prima facie* case exists when the Commonwealth produces evidence of each of the material elements of the crime charged and establishes probable cause to warrant the belief that the accused likely committed the offense. Id. Furthermore, the evidence need only be such that, if presented at trial and accepted as true, the judge would be warranted in permitting the case to be decided by the jury. Commonwealth v. Marti, 779 A.2d 1177, 1180 (Pa. Super. 2001). To meet its burden, the Commonwealth may utilize the evidence presented at the preliminary hearing and may also submit additional proof. Commonwealth v. Dantzler, 135 A.3d 1109, 1112 (Pa. Super. 2016). "The Commonwealth may sustain its burden of proving every element of the crime…by means of wholly circumstantial evidence." Commonwealth v. DiStefano, 782 A.2d 574, 582 (Pa. Super. 2001); *see also* Commonwealth v. Jones, 874 A.2d 108, 120 (Pa. Super. 2016). The weight and credibility of the evidence may not be determined and are not at issue in a pretrial habeas proceeding. Commonwealth v. Wojdak, 466 A.2d 991, 997 (Pa. 1983); *see also* Commonwealth v. Kohlie, 811 A.2d 1010, 1014 (Pa. Super. 2002). Moreover, "inferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, and the evidence must be read in the light most favorable to the Commonwealth's case." Commonwealth v. Huggins, 836 A.2d 862, 866 (Pa. 2003).

Defendant challenges the sufficiency of the Commonwealth's evidence on the charge brought against him. Defendant asserts that the Commonwealth failed to establish their *prima*

12

*facie* burden on Count 1: Criminal Use of a Communication Facility. This crime occurs when a "person uses a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony under this title…." 18 Pa.C.S. § 7512(a). Defendant's position on this issue is that the Commonwealth failed to establish a *prima facie* burden on the charge against Defendant. Since no drug transaction occurred, Defendant asserts that the Commonwealth can only satisfy the attempt prong of Section 7512. An individual commits an attempt when, "with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime. 18 Pa.C.S. § 901(a). "The substantial step test broadens the scope of attempt liability by concentrating on the acts the defendant has done and does not any longer focus on the acts remaining to be done before actual commission of the crime." Commonwealth v. Gilliam, 417 A.2d 1203, 1205 (Pa. Super. 1980). "Facilitation has been defined as 'any use of a communication facility that makes easier the commission of the underlying felony.'" Commonwealth v. Moss, 852 A.2d 374, 382 (Pa. Super. 2004) (*quoting* United States v. Davis, 929 F.2d 554, 559 (10th Cir. 1991)). "If the underlying felony never occurs, then Appellants have facilitated nothing and cannot be convicted under § 7512." Id. 35 P.S. § 780-113 prohibits the delivery of a controlled substance. Defendant believes the Commonwealth failed to establish that Defendant took a requisite substantial step. Defendant relies on a few cases to support his position. *See* Commonwealth v. Moss, 852 A.2d 374, 382 (Pa. Super. 2004); Commonwealth v. Zingarelli, 839 A.2d 1064 (Pa. Super. 2003) (evidence sufficient to uphold conviction for attempted statutory sexual assault where defendant rented motel room, bought wine and condoms, had an overnight bag, and drove to meet undercover officer posing as child); Commonwealth v. Mills, 478 A.2d 30 (Pa. Super. 1984). In Commonwealth v. Moss, three defendants challenged the

trial court's convictions under § 7512. Moss, 852 A.2d at 381. The Superior Court affirmed the convictions against the first appellant[3] because the record showed appellant made a phone call to another individual to inquire about purchasing drugs, the man he called agreed to sell drugs to appellant, the seller showed up to appellant's house, went inside for a few minutes, and then left, which is consistent with the behavior associated with selling drugs. Id. at 383. The Superior Court reversed the convictions against the second appellant[4] because "the evidence establishes merely that [Appellant] engaged in drug-related telephone conversations with a known drug trafficker. Absent proof beyond a reasonable doubt that [Appellant's] conversations facilitated a specific underlying felony that was in fact carried out, the conviction cannot stand." Id. at 384. The Court also reversed two (2) of the convictions against the third appellant[5] for the same reasons previously stated. The Court stated that "[t]he Commonwealth must prove beyond a reasonable doubt that the telephone conversations facilitated the commission of a specific underlying felony." Id. In the Commonwealth v. Mills case, the Superior Court held that the defendant had not taken a substantial step towards delivering drugs where he had ridden in a car with an undercover officer and an informant to a methamphetamine dealer's house to help the undercover officer get methamphetamine but the dealer was not home so the defendant offered to get in contact with another dealer who could get the officer the narcotics later that evening but the officer declined the offer. Commonwealth v. Mills, 478 A.2d 30, 32, 34 (Pa. Super. 1984).

Defendant asserts that the Commonwealth did not produce any evidence to tie Defendant to the phone that the CI contacted to set up the drug purchase. Dent admitted that he did not know what Defendant's voice sounded like so he could not make an identification of

---

[3] Sullivan
[4] Austin
[5] Moss

Defendant during the CI's phone calls. At the time of the preliminary hearing, law enforcement had not confirmed the ownership of the phone seized from Defendant. This CI had never been used before and therefore his testimony at the hearing on this motion was questionable. However, Defendant argues that, even if the Commonwealth could prove that Defendant was on the other end of the cellular interactions with the CI, the Commonwealth would not be able to prove that Defendant took a substantial step. Defendant contends that he was not at the site where the transaction was supposed to occur. Defense counsel articulates that the Commonwealth's reasons for not permitting Defendant to reach the meeting point are not credible. Defendant also argues that no fentanyl or drug paraphernalia were found on Defendant's person or in his vehicle. Defendant was neither seen conducting a hand-to-hand transaction nor was an unusual amount of U.S. currency found in his car or on his person. Furthermore, no price was discussed or agreed upon for the fentanyl. For these reasons, Defendant believes that the facts of this case do not even amount to those found in <u>Mills</u> where defendant was still not found to have sustained a conviction of the same offense. Defendant believes that the Commonwealth does not have sufficient evidence to satisfy their *prima facie* burden on the charge against Defendant.

Alternatively, the Commonwealth argues that <u>Mills</u> is distinguishable from this case because Defendant here took two (2) distinctive substantial steps. Such steps were communicating with the CI that he was almost at the location as well as Defendant getting in the car and travelling to the meeting place. As to the credibility of the reasons why Defendant was not permitted to arrive at the exact meeting location, the Commonwealth argues that it is preferred to surprise a flight risk with an arrest outside the CI's housing development rather than give him the opportunity to run. The Commonwealth also argues that the preliminary

hearing transcript indicated a price for the fentanyl based on the CI's history with Defendant. Lastly, the Commonwealth believes that they are entitled to inferences and do not have to prove any number of explanations as to why Defendant was found to have no drugs on his person or in his vehicle.

This Court agrees with Defendant on this issue. The evidence of the case *sub judice* fails to reach the *prima facie* burden. The record reflects only that the CI and another individual had text and phone call conversations about buying fentanyl. In Moss, the Superior Court held that the Commonwealth "may not obtain a conviction under § 7512 based solely on evidence that [Defendant] engaged in drug-related telephone conversations with a known drug trafficker." Commonwealth v. Moss, 852 A.2d 374, 384 (Pa. Super. 2004). The conviction the Court upheld in Moss involved significantly more evidence to show that appellant was facilitating the commission of a felony by contacting a drug dealer and allowing the dealer into his home. In this case, Defendant was not given the chance to follow through on law enforcement's suspicions. Even when Defendant was stopped for no articulable traffic violation, no drugs or drug paraphernalia were on Defendant or in his car. If the conviction of the same offense under Mills cannot stand after the defendant sat outside the drug dealer's house in an effort to get the undercover officer methamphetamine, then it is counterintuitive for this Court to hold Defendant on the same charge for less conduct.

Moreover, the Commonwealth's argument that the price Dent testified to at the preliminary hearing was from the CI's past experience with Defendant is not supported by the transcript from that hearing. Dent was asked if a price was discussed while the CI and the person on the other line were in contact. N.T. 10/14/2020, at 10. Dent's response was "They typically would spend $70 per gram, so about $210." The Commonwealth followed up with

16

clarifying whether that was the price discussed during the CI's communications or if that number is what was expected. Id. Dent answered, "That's what it was expected to be." Id. at 11. It is not clear from his testimony whether this amount is what Dent expected based on his knowledge and past experience in law enforcement or whether this was the CI's arrangement in the past with Defendant. Even if Defendant was the individual on the other line, he was not given the opportunity to take a substantial step before being apprehended. Therefore, the Defendant's argument prevails on this issue and the charge against Defendant must be dismissed.

**Conclusion**

The Court finds that the requisite probable cause to justify Defendant's arrest did not exist. Therefore, the evidence obtained shall be suppressed. The Court also finds that the requisite probable cause to substantiate a traffic stop of Defendant was not present in this case. Therefore, the evidence obtained as a result shall be suppressed. The Court finds that probable cause to support the warrantless search of the phone found on Defendant did not exist here and the evidence obtained because of the search of the phone shall be suppressed. Lastly, the Court finds that the Commonwealth did not present enough evidence at the preliminary hearing to establish a *prima facie* case for the count against Defendant. Therefore, Defendant's Petition for Writ of Habeas Corpus is granted.

**ORDER**

**AND NOW**, this 25th day of June, 2021, based upon the foregoing Opinion, it is **ORDERED AND DIRECTED** that Defendant's Petition for Writ of Habeas Corpus in his

Omnibus Pretrial Motion is hereby **GRANTED** and Count 1: Criminal Use of a Communication Facility is hereby **DISMISSED**. The Defendant's Motions to Suppress Evidence are **GRANTED**. It is **ORDERED** and **DIRECTED** that the phone seized from the Defendant's person and any evidence discovered therefrom shall be **SUPPRESSED**.

By the Court,

Nancy L. Butts, President Judge

cc:  DA
     Leonard Gryskewicz, Jr., Esq.
     Law Clerk (JMH)