**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANTONY BARASKY, | |
| Plaintiff, | CIVIL ACTION NO. 4:21-CV-2041 |
| v. | (MEHALCHICK, J.) |
| KEVIN DENT, et al. | |
| Defendants. | |

**MEMORANDUM**

Plaintiff Anthony Barasky ("Barasky") initiated this action on December 7, 2021, by filing a complaint. (Doc. 1). Barasky filed the operative third amended complaint on May 16, 2024, against Defendants Kevin Dent ("Dent"), Tyson Havens ("Havens"), Joshua Bell ("Bell"), Clinton Gardner ("Gardner"), and Joseph Hope ("Hope") (collectively, "Defendants"). (Doc. 79). Before the Court are Bell and Gardner's motion for summary judgment (Doc. 86), Dent and Havens's motion for summary judgment (Doc. 87), Hope's motion for summary judgment (Doc. 89), and Barasky's partial motion for summary judgment. (Doc. 89). For the reasons provided herein, Defendants' motions for summary judgment (Doc. 86; Doc. 87; Doc. 88) are **DENIED** and Barasky's motion for partial summary judgment (Doc. 89) is **GRANTED in part** and **DENIED in part**.

I. **BACKGROUND AND PROCEDURAL HISTORY**

The following background is taken from the parties' statements of material facts and responses thereto.[1] (Doc. 90; Doc. 92; Doc. 99; Doc. 102). On October 2, 2020, Defendants

---

[1] Pursuant to Local Rule 56.1, the Court accepts as true all undisputed material facts supported by the record. Where the record evinces a disputed fact, the Court will take notice.

arrested Barasky. (Doc. 90, ¶¶ 40, 121, 126-27; Doc. 99, ¶¶ 40, 121, 126-27). Dent and Havens are detectives for the Lycoming County District Attorney's Office Narcotic Enforcement Unit (the "NEU"). (Doc. 90, ¶¶ 1-2; Doc. 99, ¶¶ 1-2). Havens previously arrested Barasky in 2007 and 2016 for drug-related offenses. (Doc. 92, ¶¶ 21-22; Doc. 102, ¶¶ 21-22). Bell and Gardner are police officers for the City of Williamsport and worked with the NEU at the time of Barasky's arrest. (Doc. 90, ¶¶ 3-4; Doc. 99, ¶¶ 3-4). Hope is the Chief of Police of Old Lycoming Township and worked with the NEU at the time of Barasky's arrest. (Doc. 90. ¶ 5; Doc. 99, ¶ 5).

The NEU's investigation of Barasky arose out of an investigation of suspected drug dealer Matthew Thomas Sumpter ("Sumpter"). (Doc. 90, ¶¶ 8-9; Doc. 99, ¶¶ 8-9). Dent and the NEU began investigating Sumpter after Sumpter sold various drugs to a confidential informant working with the NEU. (Doc. 90, ¶ 9, Doc. 99, ¶ 9). On September 23, 2020, the informant told Dent that Sumpter made several trips to Philadelphia to purchase fentanyl and provided pictures showing the fentanyl Sumpter allegedly purchased. (Doc. 90, ¶¶ 14-17; Doc. 99, ¶¶ 14-17).

Based on the this information, Dent obtained a search warrant for Sumpter's home and NEU officers executed the search warrant on September 24, 2020. (Doc. 90, ¶¶ 18-19; Doc. 99, ¶¶ 18-19). The officers arrested Sumpter during the execution of the search warrant, and Sumpter informed Dent where he hid fentanyl and marijuana in his residence. (Doc. 90, ¶¶ 21-22; Doc. 99, ¶¶ 21-22). After the arrest, Dent interviewed Sumpter and Sumpter alleged that Barasky was his source of fentanyl. (Doc. 90, ¶ 24; Doc. 99, ¶ 24). Sumpter also told Dent

---

The facts have been taken in the light most favorable to the non-moving party with respect to each motion.

that he could easily obtain fentanyl from Barasky. (Doc. 92, ¶ 12; Doc. 102, ¶ 12). On the same day as his arrest, Defendants released Sumpter without charges, intending to use him as a confidential informant in the future. (Doc. 90, ¶ 27; Doc. 99, ¶ 27).

On October 2, 2020, Dent obtained a warrant for Sumpter's arrest. (Doc. 90, ¶ 30; Doc. 99, ¶ 30). After Dent arrived to arrest Sumpter, Sumpter began to cooperate. (Doc. 90, ¶ 31; Doc. 99, ¶ 31). Barasky asserts that Sumpter was visibly under the influence of drugs on October 2, 2020, but Defendants counter that although Dent observed that Sumpter could have been using drugs that day, he was not severely affected by them. (Doc. 90, ¶¶ 33-34; Doc. 99, ¶¶ 33-34). Prior to Barasky's arrest, Dent, Bell, Gardner, and Havens met to coordinate an operation in which Sumpter arranged a drug purchase with Barasky so that Defendants could arrest Barasky. (Doc. 90, ¶¶ 40-42; Doc. 99, ¶¶ 40-42). During this meeting, Havens informed Dent, Bell, and Gardner about his previous interactions with Barasky, including a 2016 arrest in which Barasky fled from a traffic stop. (Doc. 90, ¶ 43; Doc. 99, ¶ 43). Given concerns about Barasky fleeing, Dent, Bell, Gardner, and Havens decided to set up a controlled drug purchase and to stop Barasky while he was en route to the purchase. (Doc. 92, ¶ 20; Doc. 102, ¶ 20). Dent arranged for a second meeting attended by Bell, Gardner, Havens, and Hope. (Doc. 90, ¶¶ 53-56; Doc. 99, ¶¶ 53-56).

Once Defendants were all up to speed on the operation, Sumpter texted Dent a number he said belonged to Barasky. (Doc. 90, ¶ 77-79; Doc. 92, ¶ 34; Doc. 99, ¶¶ 77-79; Doc. 102, ¶ 34). The contact name for this number was "Plug," which is a slang term that can mean drug dealer. (Doc. 90, ¶ 77-79; Doc. 92, ¶ 34; Doc. 99, ¶¶ 77-79; Doc. 102, ¶ 34). Sumpter texted "Plug" that he had his "bread," a slang term for money. (Doc. 90, ¶¶ 90-91; Doc. 99; Doc. 90-91). Sumpter told Dent that he owed Barasky money. (Doc. 90, ¶ 96; Doc. 99, ¶ 96).

"Plug" called Sumpter to tell him to "head out" because he was nearby. (Doc. 90, ¶ 75; Doc. 92, ¶ 36; Doc. 99, ¶ 75; Doc. 102, ¶ 36). One minute later, Bell spotted Barasky driving near the rendezvous location and pulled him over. (Doc. 92, ¶¶ 36-37). The officers arrested Barasky, searched him and his belongings, and impounded his car. (Doc. 90, ¶¶ 146-47; Doc. 92, ¶¶ 40-41; Doc. 99, ¶¶ 146-47; Doc. 102, ¶¶ 40-41). The officers did not find any drugs during their searches. (Doc. 90, ¶ 147; Doc. 99, ¶ 147). After the officers arrested Barasky, Dent called the number Sumpter saved as "Plug" and Barasky's phone rang. (Doc. 92, ¶ 42; Doc. 102, ¶ 42).

Dent charged Barasky with criminal use of a communication facility in violation of 18 Pa.C.S.A. § 7512(a), which the Lycoming County District Attorney approved. (Doc. 92, ¶¶ 45-46; Doc. 102, ¶¶ 45-46). Barasky was transferred to the Lycoming County Prison, and Bell called the prison at Dent's request to ensure the prison placed Barasky in a dry cell. (Doc. 90, ¶ 152; Doc. 99, ¶ 152). The dry cell would allow law enforcement to examine Barasky's excrements for evidence. (Doc. 90, ¶ 152; Doc. 99, ¶ 152). Defendants did not find any drugs or other contraband as a result of Barasky's October 2, 2020, arrest. (Doc. 90, ¶¶ 153-54; Doc. 99, ¶¶ 153-54).

Dent was arraigned before a state magisterial district justice, and the magistrate set his bail at $85,000. (Doc. 90, ¶¶ 184-85; Doc. 99, ¶¶ 184-85). As a result of his arrest, Barasky was incarcerated from October 2, 2020, until May 19, 2021. (Doc. 90, ¶ 186; Doc. 99, ¶ 186). On June 25, 2021, Judge Nancy L. Butts of the Lycoming County Court of Common Pleas dismissed the charges against Barasky. (Doc. 90, ¶ 191; Doc. 99, ¶ 191).

In his operative complaint in this matter, Barasky alleges four counts. (Doc. 79). In Count I, Barasky alleges Defendants are liable under 42 U.S.C. § 1983 for false arrest. (Doc.

79, ¶¶ 95-126). In Count II, Barasky alleges Dent is liable under § 1983 for malicious prosecution. (Doc. 79, ¶¶ 127-47). In Count III, Barasky alleges Defendants are liable under § 1983 for unconstitutional conspiracy. (Doc. 79, ¶¶ 148-69). In Count IV, Barasky alleges Defendants are liable for false imprisonment.[2] (Doc. 79, ¶¶ 170-74).

## II.  LEGAL STANDARDS

### A.  MOTIONS FOR SUMMARY JUDGMENT

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the

---

[2] In the third amended complaint, Barasky does not present Count IV as a Section 1983 claim. (Doc. 79, ¶¶ 170-74). However, all parties agree that Count IV, Barasky's false imprisonment claim, should be analyzed under the same standard as Count I, Barasky's Section 1983 false arrest claim. (Doc. 91, at 9; Doc. 93, at 8; Doc. 94, at 11; Doc. 95, at 11; Doc. 103, at 9).

nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." *See* M.D. Pa. L.R. 56.1.

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must go beyond the pleadings with affidavits or declarations, answers to interrogatories, or the like to demonstrate specific material facts which give rise to a genuine issue. *Fed. R. Civ. P. 56(c)*; *Celotex*, 477 U.S. at 324. The non-movant must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Furthermore, mere conclusory allegations and self-serving testimony, whether made in the complaint or a sworn statement, cannot be used to obtain or avoid summary judgment when uncorroborated and contradicted by other evidence of record. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Thomas v. Delaware State Univ.*, 626 F. App'x 384, 389

n.6 (3d Cir. 2015) (not precedential) ("[U]nsupported deposition testimony, which is contradicted by the record, is insufficient to defeat summary judgment."); *Nat'l Labor Rel. Bd. v. FES*, 301 F.3d 83, 95 (3d Cir. 2002) ("[The plaintiff's] testimony. . . amounts to an unsupported, conclusory assertion, which we have held is inadequate to satisfy the movant's burden of proof on summary judgment").

### B. 42 U.S.C. § 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

"Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *See Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

## III.  DISCUSSION

Barasky asks this court to enter summary judgment in his favor by finding: 1) Defendants were police officers, 2) Defendants were acting under color of state law within the meaning of § 1983, 3) Defendants arrested him, 4) Defendants lacked probable cause to arrest him, 5) Dent initiated criminal proceedings against Barasky, 6) Dent acted maliciously or for a purpose other than bringing Barasky to justice, and 7) Barasky suffered a deprivation of liberty "as a result of [Dent's] malicious prosecution." (Doc. 89, at 2-3). Defendants move for summary judgment on all claims, and alternatively assert they are entitled to qualified immunity on all claims. (Doc. 93; Doc. 94; Doc. 95). Defendants also aver they are entitled to summary judgment on the issue of punitive damages. (Doc. 93, at 20-22; Doc. 94, at 14-15; Doc. 95, at 25-26).

### A.  BARASKY'S MOTION FOR SUMMARY JUDGMENT ON UNDISPUTED FACTS WILL BE GRANTED.

Barasky moves for summary judgment on several specific elements of his claims an on multiple undisputed facts. (Doc. 89, at 2-3). Federal Rule of Civil Procedure 56 allows parties to move for summary judgment on a "part of [a] claim or defense." Fed. R. Civ. P. 56(a); *see Hudak v. Clark*, No. 3:16-CV-288, 2018 WL 1785865, at *2 (M.D. Pa. Apr. 13, 2018); *Maye v. Pennsylvania Dep't of Corr.*, No. 1:21-CV-00530, 2023 WL 7545523, at *6 (M.D. Pa. Aug. 2, 2023). To the extend Barasky is asking for summary judgment on the following undisputed facts, the Court will grant his motion, including finding that Barasky was arrested by the Defendants, that Dent initiated criminal proceedings against Barasky, that the criminal proceedings initiated by Dent were terminated in Barasky's favor, and that Defendants were police officers, as none of these facts are in dispute. (Doc. 89, at 2-3; Doc. 90, ¶ 191; Doc. 92, ¶¶ 1-5, 38, 40, 42-43, 45; Doc. 99, ¶ 191; Doc. 102, ¶¶ 1-5, 38, 40, 42-43, 45). Further, as police

officers conducting official police business are indisputably acting under color of state law within the meaning of Section 1983, the Court will grant Barasky's motion that the Court enter summary judgment on this issue. *See Curley v. Klem*, 298 F.3d 271, 277 (3d Cir. 2002).

However, Barasky also moves for summary judgment on multiple disputed issues, including 1) whether Defendants arrested Barasky without probable cause, 2) whether Dent acted maliciously or for a purpose other than bringing Barasky to justice, and 3) whether Barasky was deprived of liberty "as a result of [Dent's] malicious prosecution." (Doc. 80, at 2-3). As described below, genuine disputes of material fact prevent the Court from granting summary judgment on these issues.

B. GENUINE DISPUTES OF MATERIAL FACT AS TO PROBABLE CAUSE PRECLUDE ENTRY OF SUMMARY JUDGMENT ON COUNTS I, II AND IV.

Defendants aver that they are entitled to summary judgment on Counts I and IV because there is no genuine dispute of material fact regarding whether they had probable cause to arrest Barasky. (Doc. 93, at 8-18; Doc. 94, at 4-9, 11; Doc. 95, at 11-16). Havens, Bell, Gardner, and Hope submit that they reasonably relied on Dent's probable cause determination when arresting Barasky. (Doc. 93, at 8-18; Doc. 94, at 4-9, 11; Doc. 95, at 11-16). Similarly, Dent avers that he is entitled to summary judgment on Count II, Barasky's malicious prosecution claim, because there is no genuine dispute of fact that he had probable cause to arrest and pursue charges against Barasky. (Doc. 95, at 16-19). Barasky also moves for summary judgment on the issue of probable cause, arguing that no reasonable jury could conclude that Defendants had probable cause based on Sumpter's information. (Doc. 89, at 2-3; Doc. 91, at 11-26). Barasky also avers that Dent maliciously prosecuted him without probable cause. (Doc. 91, at 26-27).

To survive summary judgment on false arrest, false imprisonment, and malicious prosecution[3] claims, a plaintiff must establish that the defendants did not have probable cause to detain them, arrest them, or file charges against them. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995) (stating "where the police lack probable cause [under the Fourth Amendment] to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest"); *see also Pardue v. Gray*, 136 F. App'x 529, 532 (3d Cir. 2005) (stating "[i]n order to prevail on a § 1983 malicious prosecution claim, the plaintiff must show an absence of probable cause for initiating the criminal proceedings"); *see also Karkut v. Target Corp.*, 453 F. Supp. 2d 874, 879 (E.D. Pa. 2006) (noting that false arrest and false imprisonment claims are analyzed together because both turn on whether a defendant had probable cause). "[A]t the summary judgment stage, [courts] must assess probable cause based upon the 'totality-of-the-circumstances' available to the arresting officer and view those circumstances in the light most favorable to [the plaintiff]." *Harvard v. Cesnalis*,

---

[3] To survive a motion for summary judgment on a malicious prosecution claim, a plaintiff must establish the following:

> (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in [the plaintiff's] favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007).

Dent mostly challenges Barasky's malicious prosecution claim on the basis of the third element, lack of probable cause. (Doc. 95, at 16-19). However, Dent also states in passing that Barasky fails to present any evidence that Dent acted maliciously, which is a challenge to the fourth element. (Doc. 95, at 19). "Malice may be inferred from the absence of probable cause." *Lippay v. Christos*, 996 F.2d 1490, 1502 (3d Cir. 1993); *see also Henderson v. City of Philadelphia*, 853 F. Supp. 2d 514, 519 (E.D. Pa. 2012). Dent provides no arguments as to why malice should not be inferred if the Court determines a reasonable jury could conclude that he lacked probable cause.

10

973 F.3d 190, 200 (3d Cir. 2020) (quoting *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 467 (3d Cir. 2016))

"Probable cause exists if there is a 'fair probability' that the person committed the crime at issue." *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000). "An officer has probable cause to arrest a person 'when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested.'" *Harvard*, 973 F.3d at 199–200 (quoting *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995). "The [probable cause] inquiry is an objective one, and 'an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause.'" *Napier v. City of New Castle*, 407 F. App'x 578, 583 (3d Cir. 2010) (nonprecedential) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)). "In determining probable cause, arresting officers must consider plainly exculpatory evidence in addition to inculpatory evidence. This is true 'even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists.'" *Harvard*, 973 F.3d at 200 (citations omitted).

The Third Circuit has noted that "[t]here is a tension inherent in evaluating probable cause at the summary judgment stage." *Dempsey*, 834 F.3d at 468. While "the summary judgment standard asks whether there is a 'genuine dispute as to any material fact,' viewing the evidence 'in the light most favorable to the non-moving party. . .' the probable cause standard by definition allows for the existence of conflicting, even irreconcilable, evidence." *Dempsey*, 834 F.3d 457, 468 (citations omitted). Courts must reconcile that tension by examining "all such facts [favorable and unfavorable to the nonmovant] and assess[ing] whether any reasonable jury could conclude that those facts, considered in their totality in the

light most favorable to the nonmoving party, did not demonstrate a 'fair probability' that a crime occurred." *Dempsey*, 834 F.3d at 468. The Third Circuit has found that probable cause determinations are "'necessarily fact-intensive' and thus 'it will usually be appropriate for a jury to determine whether probable cause existed.'" *Harvard*, 973 F.3d at 200 (quoting *Dempsey*, 834 F.3d at 468); *see also Eckman v. Lancaster City*, 742 F. Supp. 2d 638, 650 (E.D. Pa. 2010), *aff'd*, 515 F. App'x 93 (3d Cir. 2013), *and aff'd*, 529 F. App'x 185 (3d Cir. 2013) (stating "[t]he existence of probable cause is usually a question for a jury").

 "Information received from a confidential informant can form the basis for probable cause to arrest, if it can reasonably be deemed reliable." *United States v. King*, 366 F. Supp. 2d 265, 273 (E.D. Pa. 2005), *aff'd*, 182 F. App'x 88 (3d Cir. 2006). "When the police receive information from an informant for the first time, they have a duty to independently corroborate at least some of the information the informant provides." *United States v. Nasir*, 17 F.4th 459, 466 (3d Cir. 2021); *see United States v. Lucidonio*, 592 F. Supp. 3d 381, 391 (E.D. Pa. 2022). An officer may do this by researching the suspect's history of unlawful activity and verifying that the informant's descriptions of and predictions regarding the suspect match reality. *See Nasir*, 17 F.4th at 467 (finding an officer sufficiently verified the credibility of a first time informant by affirming the suspect had a criminal history relevant to the investigation, verifying that the suspect matched the informant's descriptions, and verifying that the suspect was in the locations the informant said he would be in); *see also United States v. Carrion*, No. 22-3357, 2024 WL 1281132, at *2 (3d Cir. Mar. 26, 2024) (nonprecedential) (finding an officer sufficiently verified the credibility of a first time informant by verifying the suspect matched the informant's description and by verifying the suspect would be where the informant said he would be). However, even if information from a witness or an informant

initially provides probable cause, a reasonable fact finder may conclude that an officer loses that probable cause where the witness or informant's information is later contradicted, or the officers are given reason to doubt the credibility of the information. *See Andrews v. Scuilli*, 853 F.3d 690, 705 (3d Cir. 2017) (finding that a genuine dispute of material fact existed regarding whether an officer had probable cause because an officer relied on information from an eye witness that was later contradicted prior to the arrest); *see Brown v. Kepple*, No. 1:22-CV-00165, 2024 WL 4137313, at *19 (M.D. Pa. Sept. 10, 2024), *dismissed sub nom. Brown v. Gap, Inc.*, No. 24-2822, 2024 WL 5497993 (3d Cir. Dec. 19, 2024) (finding that a reasonable jury could conclude that an officer lacked probable cause where a presumably credible eyewitness identified the plaintiff as a shoplifter but surveillance footage contradicted her account). Further, a police officer does not have probable cause where they base their probable cause determination on the statements of another police officer who themselves does not "possess[] the facts and circumstances necessary to support a finding of [probable cause]." *Rogers v. Powell*, 120 F.3d 446, 453 (3d Cir. 1997); *see Vanderklok v. United States*, 140 F. Supp. 3d 373, 382 (E.D. Pa. 2015), *aff'd*, 774 F. App'x 73 (3d Cir. 2019) (stating "probable cause can be based on a fellow officer's statement only if the statement is supported by actual facts that satisfy the probable cause standard").

When determining whether an arrest was based on probable cause, courts "must identify the elements of the crimes charged." *Alburg v. Jones*, 784 F. Supp. 3d 775, 790 (E.D. Pa. 2025). Here, the relevant criminal charge is criminal use of a communication facility in violation of 18 Pa.C.S.A. § 7512(a). (Doc. 92, ¶¶ 45-46; Doc. 102, ¶¶ 45-46). Under 18 Pa.C.S.A. § 7512(a), "a person commits a felony of the third degree if that person uses a communication facility to commit, cause or facilitate the commission or the attempt thereof

of any crime which constitutes a felony." *See Commonwealth v. Aguilar*, 340 A.3d 311, 322 (Pa. Super. 2025). "[T]he term 'communication facility' means a public or private instrumentality used or useful in the transmission of signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part, including, but not limited to, telephone." 18 Pa.C.S.A. § 7512 (c); *see Aguilar*, 340 A.3d at 322. A defendant is guilty of criminal use of a communication facility where "(1) [the] defendant knowingly and intentionally used a communication facility, (2) with the intent to commit, cause, or facilitate an attempted underlying felony, and (3) the underlying felony was attempted or committed." *Aguilar*, 340 A.3d at 322; *see Commonwealth v. Wunderlich*, 332 A.3d 112, 116 (Pa. Super. 2025).

Neither Barasky nor Defendants are entitled to summary judgment on the issue of probable cause. Defendants aver they had probable cause for Barasky's arrest because Dent used a confidential informant, Sumpter, to set up a drug purchase with Barasky. (Doc. 93, at 11-12; Doc. 94, at 4-9; Doc. 95, at 13-16). Defendants further aver that they sufficiently verified that Sumpter's information was credible by having Dent observe Sumpter text a contact named "Plug," pulling over Barasky while he was en route to Sumpter's location, and calling "Plug" while near Barasky's phone to verify that "Plug" was Barasky. (Doc. 93, at 11-12; Doc. 94, at 4-9; Doc. 95, at 13-16).

However, Barasky presents sufficient evidence from which a reasonable jury could conclude that Sumpter was an unreliable informant and Defendants failed to sufficiently verify that the information they learned from Sumpter was reliable. First, it is undisputed that Barasky's arrest was the first time Defendants used Sumpter as an informant. (Doc. 90, ¶ 44; Doc. 99, ¶ 44). It is also undisputed that Sumpter only cooperated with Dent because Dent agreed not to charge him with drug-related crimes if he acted as a confidential informant.

(Doc. 90, ¶ 27; Doc. 99, ¶ 27). Dent testified that prior to Barasky's arrest, he intended to "arrest [Sumpter] because he was no longer cooperating" and that he went to Sumpter's house to "[g]ive him some motivation to cooperate." (Doc. 90-5, at 21). Dent further testified that on October 2, 2020, prior to Barasky's arrest, Dent observed Sumpter and believed that Sumpter could have been under the influence of drugs based on his appearance and eyes. (Doc. 90-5, at 93). Based on this, Defendants had ample reason to doubt Sumpter's credibility, and thus, to have probable cause, Defendants needed to verify the information Sumpter provided. *See Nasir*, 17 F.4th at 467; *King*, 366 F. Supp. 2d at 273.

Nor do the text messages from Sumpter sufficiently verify the information. Although Sumpter texted a contact labeled as "Plug," none of the text messages state that "Plug" was going to bring Sumpter drugs, only that Sumpter intended to give "Plug" money. (Doc. 92-14). It is undisputed that as a result of Dent's observations of this text exchange, Defendants pulled Barasky over, searched him, and did not find drugs. (Doc. 90, ¶¶ 133-35, 147; Doc. 99, ¶¶ 133-35, 147). A reasonable jury could find Sumpter unreliable and interpret the text messages as Barasky agreeing to meet Sumpter to collect the money Sumpter owed him rather than sell drugs. *See Hunt v. Cromartie*, 526 U.S. 541, 553 (1999) (stating "[s]ummary judgment . . . is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact"); *see also Andrews*, 853 F.3d at 705 (finding that probable cause is a jury question where the plaintiff's evidence suggests the defendants relied on unreliable witness statements); *see also Thomas v. Delaware River Port Auth. (DRPA)*, No. CIV. 10-5514, 2011 WL 6257166, at *9 (D.N.J. Dec. 14, 2011) (noting that there is a genuine dispute of material fact regarding probable cause where the "'evidence is susceptible of different interpretations or inferences'" (quoting *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737,

15

745 (3d Cir. 1996)). Havens, Bell, Gardner, and Hope also argue that they acted reasonably by relying on Dent's probable cause determination, but they could not rely on Dent's statements if Dent himself lacked probable cause. *Rogers*, 120 F.3d at 453; *see Vanderklok*, 140 F. Supp. 3d at 382.

Defendants also aver that they had probable cause based on Sumpter's information because Barasky had a criminal history. (Doc. 93, at 13-17; Doc. 94, at 6, 8-9; Doc. 95, at 13). Defendants further posit that because Barasky repeatedly invoked the Fifth Amendment when asked about his alleged drug dealing during his deposition, the Court should draw an adverse inference regarding whether Barasky attempted to sell drugs to Sumpter on the day of his arrest. (Doc. 93, at 13-17; Doc. 94, at 6, 8-9; Doc. 95, at 14-16). If a reasonable jury concludes that Sumpter was unreliable and Defendants failed to adequately verify the information Sumpter shared, the jury may also conclude that Barasky's prior criminal history is insufficient to establish probable cause. *See United States v. Williams*, 574 F. Supp. 2d 530, 553 (W.D. Pa. 2008), *aff'd*, 416 F. App'x 130 (3d Cir. 2011) (noting that prior convictions are not sufficient to establish probable cause on their own); *see also United States v. Penney*, No. 2:19-CR-8, 2020 WL 6048810, at *11 (W.D. Pa. Oct. 13, 2020) (noting the same). Further, while Defendants are correct that courts may make an adverse inference where a party invokes the Fifth Amendment in civil cases, such an inference is only appropriate  where there is "sufficient independent evidence—besides the mere invocation of the [Fifth Amendment] privilege—upon which to base the negative inference." *United States v. Loc. 560 of Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen, & Helpers of Am.*, 780 F.2d 267, 292 n. 32 (3d Cir. 1985); *see also Castellani v. City of Atl. City*, No. CV 13-5848, 2017 WL 3112820, at *8 (D.N.J. July 21, 2017) (declining to draw an adverse inference based on a party's invocation of the Fifth

16

Amendment where there was no evidence supporting the inference outside of the invocation of the Fifth Amendment). It is undisputed that Defendants never found drugs as a result of Barasky's arrest, and that Judge Butts dismissed the charges against Barasky. (Doc. 90, ¶¶ 153-54, 191; Doc. 99, ¶¶ 153-54, 191). Thus, the Court will not infer that Barasky transported drugs the day of his arrest and leaves the question of probable cause to the jury.

For these same reasons and same disputed facts, the Court will deny Barasky's motion for summary judgment on the issue of probably cause. Additionally, Barasky argues that even if a reasonable jury concludes that Defendants had probable cause at the time of the arrest, they lost that probable cause after they searched Barasky incident to arrest and did not find drugs. (Doc. 91, at 20-21). It is undisputed that Defendants did not fully search Barasky's vehicle or verify that Barasky's excrements did not contain drugs until several days after Defendants arrested him and Dent filed charges against him. (Doc. 92, ¶¶ 45, 51-53; Doc. 102, ¶¶ 45, 51-53). Havens testified that based on his knowledge as a police officer, he believed it was possible that Barasky modified his car so that he could hide drugs in a way that Defendants could not find them without an extensive search of the car. (Doc. 90-10, at 37-40). Bell testified that it is not uncommon for suspected drug dealers to hide evidence "in their body." (Doc. 92-3, at 13). Bell further testified that in such cases, officers often recommend placing the suspect in a dry cell to examine their excrement for evidence. (Doc. 92-3, at 13). A reasonable jury could conclude that at the time Defendants arrested Barasky and Dent placed charges against him, Defendants had probable cause to believe that later searches of Barasky's vehicle and excrement would uncover evidence of his alleged drug dealing.[4] *See*

---

[4] Barasky also avers that Defendants lacked probable cause because they did not allow Barasky to reach he and Sumpter's meeting location. (Doc. 91, at 17-19). Under the charged

*United States v. Bridges*, No. 21-1679, 2022 WL 4244276, at *3 (3d Cir. Sept. 15, 2022) (nonprecedential) (finding that officers had probable cause to believe that a delayed search of a suspect's vehicle would unveil evidence of a crime) *see also Boyd v. Plainfield Police Div.*, No. CV 15-2210, 2019 WL 2385887, at *7 (D.N.J. June 6, 2019) (finding officers had probable cause to arrest a plaintiff for drug offenses despite the officers not finding drugs in the suspect's vehicle at the time of the arrest).

Relatedly, Barasky moves for summary judgment on the issues of whether "Dent acted maliciously or for a purpose other than bringing [Barasky] to justice" and whether Barasky suffered a deprivation of liberty "as a result of [Dent's] malicious prosecution." (Doc. 89, at 2-3). Barasky avers that Dent omitted information from the affidavit of probable cause charging Baraksy. (Doc. 91, at 22-26). Barasky contends that Dent omitted information about Sumpter's unreliability, Dent's failure to verify Sumpter's information, and Defendants' failure to find drugs. (Doc. 91, at 22-26). According to Barasky, the omission of this information constitutes malicious prosecution because the omitted information shows that Dent lacked probable cause when he charged Baraksy. (Doc. 91, at 22-26). Baraksy's arguments fail because they are dependent on the same issues of material fact which preclude summary judgment on the issue of probable cause. *See Johnson*, 477 F.3d at 82 (noting that a defendant only maliciously prosecutes a plaintiff where the defendant lacks probable cause);

---

offense, criminal use of a communication facility, Defendants only needed probable cause that Barasky 1) knowingly and intentionally used a cell phone, 2) with the intent to commit or facilitate an attempt to commit a felony, such as a drug sale, and 3) committed or attempted to commit the felony. *See Aguilar*, 340 A.3d at 322 (listing the required elements of criminal use of a communication facility). For the reasons discussed above, a jury could conclude that Defendants reasonably believed that Sumpter and Barasky texted to arrange a drug purchase in which Barasky was the seller and Barasky was driving to that drug purchase at the time of the arrest.

*see also Lippay*, 996 F.2d at 1502 (noting that whether a defendant acted with malice or other ill intent is typically "inferred from the [presence or] absence of probable cause" in malicious prosecution cases); *see also Henderson*, 853 F. Supp. 2d at 519 (noting the same).

Accordingly, Defendants' motions for summary judgment regarding Counts I, II, and IV are **DENIED**. (Doc. 86; Doc. 87; Doc. 88). Barasky's motions for summary judgment as to probable cause and whether Dent acted maliciously or whether Barasky suffered a deprivation of liberty as a result of the malicious prosecution are **DENIED**. (Doc. 89, at 2-3).

C. GENUINE DISPUTES OF MATERIAL FACT PRECLUDE SUMMARY JUDGMENT ON BARASKY'S CONSPIRACY CLAIM.

In Count III, Barasky alleges Defendants are liable under Section 1983 for unconstitutional conspiracy. (Doc. 79, ¶¶ 148-69). Defendants aver that Barasky fails to present evidence that they reached an understanding to deprive him of his constitutional rights. (Doc. 93, at 18-20; Doc. 94, at 9-10; Doc. 95, at 19-21). Barasky responds that a reasonable jury could infer an unconstitutional conspiracy based on evidence that Defendants held multiple meetings to plan Barasky's arrest without probable cause. (Doc. 106, at 27-30).

"To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law 'reached an understanding' to deprive him of his constitutional rights." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 293–94 (3d Cir. 2018) (quoting *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150 (1970)). "[D]irect evidence of a conspiracy is rarely available and . . . the existence of a conspiracy must usually be inferred from the circumstances." *Capogrosso v. The Supreme Ct. of New Jersey*, 588 F.3d 180, 184 (3d Cir. 2009) (citing *Crabtree By & Through Crabtree v. Muchmore*, 904 F.2d 1475, 1481 (10th Cir. 1990); *see Madero v. Luffey*, 549 F. Supp. 3d 435, 447 (W.D. Pa. 2021). A reasonable jury may infer a set of defendants reached an understanding to violate a plaintiff's constitutional rights "through

19

circumstantial evidence. 'Such circumstantial evidence may include that the alleged conspirators did or said something to create an understanding, the approximate time when the agreement was made, the specific parties to the agreement, the period of the conspiracy, or the object of the conspiracy.'" *Baker v. Benton Area Sch. Dist.*, 418 F. Supp. 3d 17, 52 (M.D. Pa. 2019) (quoting *Jutrowski*, 904 F.3d at 294). Where a plaintiff presents evidence that a set of defendants communicated regarding an alleged violation of a plaintiff's rights prior to committing the alleged violation, a reasonable jury could conclude that the defendants engaged in a conspiracy. *See Baker*, 418 F. Supp. 3d at 53 (finding that a reasonable jury could infer that a set of defendants engaged in a conspiracy where a plaintiff presented evidence that the defendants repeatedly communicated about the alleged constitutional violation); *see also Klein v. Madison*, 374 F. Supp. 3d 389, 421 (E.D. Pa. 2019) (finding that a plaintiff sufficiently created a genuine dispute of fact regarding her conspiracy claim by presenting evidence that police officers had a brief conversation prior to allegedly violating her Fourth Amendment rights).

It is undisputed that on September 24, 2020, Dent interviewed Sumpter, and during that interview, Sumpter alleged Barasky was his source of fentanyl. (Doc. 90, ¶ 24; Doc. 99, ¶ 24). It is further undisputed that prior to Barasky's arrest, Dent, Bell, Gardner, and Havens met to discuss Dent's interview with Sumpter. (Doc. 90, ¶¶ 40-41; Doc. 99, ¶¶ 40-41). Finally, it is undisputed that on October 2, 2020, after Sumpter agreed to cooperate with Dent, Dent called Bell, who then contacted Hope. (Doc. 90, ¶¶ 53-54; Doc. 99, ¶¶ 53-54). Dent testified that after he called Bell, "everybody with the [NEU]" held a meeting regarding their plan to arrest Barasky. (Doc. 90-5). As discussed *supra* Section III.B, a reasonable jury could find that Sumpter's information did not provide Defendants with probable cause to arrest Barasky.

Based on the circumstantial evidence, a reasonable jury could conclude that Defendants held multiple meetings in which they came to an agreement to arrest Barasky without probable cause. *See Baker*, 418 F. Supp. 3d at 53; *see also Klein*, 374 F. Supp. 3d at 421. Accordingly, the Court **DENIES** Defendants' motions for summary judgment regarding Count III. (Doc. 86; Doc. 87; Doc. 88).

D.  Defendants are not entitled to summary judgment on the issue of punitive damages.

Barasky requests punitive damages on all four of his claims. (Doc. 79, at 34). According to Defendants, they are entitled to summary judgment on the issue of punitive damages because Barasky fails to present evidence that Defendants had a sufficient mindset when arresting Barasky to warrant punitive damages. (Doc. 93, at 20-22; Doc. 94, at 14-15; Doc. 95, at 25-26). Barasky counters that punitive damages are a question of fact for the jury. (Doc. 103, at 25-26).

"A jury may award punitive damages [for Section 1983 claims] when it finds reckless, callous, intentional or malicious conduct." *Springer v. Henry*, 435 F.3d 268, 281 (3d Cir. 2006); *see Eckman*, 742 F. Supp. 2d at 657. Where a plaintiff's substantive claims survive summary judgment, the question of punitive damages is typically left to the jury. *See Eckman*, 742 F. Supp. 2d at 657 (finding that because the plaintiff's substantive claims survived summary judgment, a jury "must determine whether punitive damages could be available in this case"); *see also Rodriguez v. City of New Brunswick*, No. CV 12-4722, 2017 WL 6442097, at *21 (D.N.J. Dec. 18, 2017) (noting that "[t]he decision to award punitive damages [for Section 1983 claims], however, is generally a jury question"); *see also Rand v. New Jersey*, No. CIV. 12-2137, 2015 WL 1116310, at *16 (D.N.J. Mar. 11, 2015) (noting the same).

Here, as discussed *supra* Sections III.B-C, Barasky's substantive claims survive summary judgment. Accordingly, the Court finds that the issue of punitive damages is a question for the jury. *See Eckman*, 742 F. Supp. 2d at 657; *see also Rodriguez*, 2017 WL 6442097, at *21; *see also Rand*, 2015 WL 1116310, at *16. Defendants' motions for summary judgment regarding Barasky's claims for punitive damages are **DENIED**. (Doc. 86; Doc. 87; Doc. 88).

E.  I̲ᴛ ɪꜱ ᴘʀᴇᴍᴀᴛᴜʀᴇ ᴛᴏ ᴅᴇᴄɪᴅᴇ ᴛʜᴇ ɪꜱꜱᴜᴇ ᴏꜰ ǫᴜᴀʟɪꜰɪᴇᴅ ɪᴍᴍᴜɴɪᴛʏ.

Defendants aver that even if Barasky survives summary judgment on the merits, they are entitled to qualified immunity. (Doc. 93, at 22-27; Doc. 94, at 11-13; Doc. 95, at 21-25). According to Defendants, their actions were objectively reasonable even if Barasky's arrest was unlawful. (Doc. 93, at 22-27; Doc. 94, at 11-13; Doc. 95, at 21-25). Havens, Bell, Gardner, and Hope argue that even if Dent acted unreasonably, they are entitled to qualified immunity because they reasonably relied on information Dent provided them. (Doc. 93, at 22-27; Doc. 94, at 11-13; Doc. 95, at 21-25). Barasky avers that Defendants are not entitled to qualified immunity because they acted unreasonably and violated his clearly established right not to be arrested or detained without probable cause. (Doc. 103, at 27-29).

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 801 (1982); *see Leschinsky v. Caceres*, No. 3:23-CV-822, 2025 WL 935958, at *5 (M.D. Pa. Mar. 27, 2025). Whether a defendant is entitled to qualified immunity is a two-part analysis:

> First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was clearly established at the time of a defendant's alleged misconduct. Qualified

immunity is applicable unless the official's conduct violated a clearly established constitutional right.

*Montanez v. Thompson*, 603 F.3d 243, 250 (3d Cir. 2010), *as amended* (May 25, 2010) (citing *Pearson v. Callahan*, 555 U.S. 223, 230 (2009).

When assessing whether a defendant violated a clearly established right, a court may not analyze the plaintiff's rights abstractly, but rather, must determine whether "existing law. . . clearly establish[es] that what *this* officer did in *these* circumstances violated the plaintiff's rights." *Urda v. Sokso*, 146 F.4th 311, 314 (3d Cir. 2025) (nonprecedential) (emphasis in original). However, a court should withhold from assessing qualified immunity at the summary judgment stage where assessing qualified immunity requires the Court to assess "disputed, historical facts material to the objective reasonableness of an officer's conduct." *Curley*, 298 F.3d at 278; *see Leschinsky*, 2025 WL 935958, at *5 (declining to assess qualified immunity at the summary judgment stage where doing so required the court to resolve disputes of fact); *see also Hindman v. City of Pittsburgh, Pennsylvania*, No. 2:23-CV-01873, 2024 WL 4198152, at *7 (W.D. Pa. Sept. 16, 2024) (same); *Contreras v. Conrad*, No. 3:17-CV-02360, 2020 WL 2193429, at *9 (M.D. Pa. May 6, 2020) (same).

In this case, Chief Judge Brann, writing for the Court while evaluating Defendants' previous motions to dismiss, held that "[t]here is no question that . . . the right to be free from arrest except on probable cause, was clearly established before Barasky's 2020 arrest." (Doc. 57, at 15) (citations and internal quotations omitted). Consistent with Chief Judge Brann's previous finding, courts have repeatedly found that the right to be free from arrest and detention without probable cause is a clearly established right. *See Mazuka v. Rice Twp. Police Dep't*, 655 F. App'x 892, 894 (3d Cir. 2016) (nonprecedential) (stating "the right to be free from arrest without probable cause, which, despite its breadth, is a bedrock constitutional

principle and a clearly established right"); *see also Andrews*, 853 F.3d at 705 (3d Cir. 2017) (noting that the right to be free from arrest without probable cause is a clearly established right); *see also Brown*, 2024 WL 4137313, at *21 (noting the same). Courts have further found that an officer violates a plaintiff's clearly established rights where the officer lacked probable cause due to his reliance on unreliable witness or informant information. *See Andrews*, 853 F.3d at 705 (denying qualified immunity where a plaintiff established a genuine dispute of fact regarding whether a police officer lacked probable cause due to unreliable witness information); *see also Brown*, 2024 WL 4137313, at *21 (same). However, the Third Circuit has held that "where a police officer makes an arrest on the basis of oral statements by fellow officers, an officer will be entitled to qualified immunity from liability in a civil rights suit for unlawful arrest provided it was objectively reasonable for him to believe, on the basis of the statements, that probable cause for the arrest existed." *Rogers*, 120 F.3d at 455.

Determining qualified immunity at this stage would be premature due to several disputes of material fact. First, as discussed *supra* Section III.B, there is a genuine dispute of material fact regarding whether Defendants had probable cause and whether Sumpter's information was unreliable. Further, Dent testified that prior to Barasky's arrest, he relayed the information he received from Sumpter to the other Defendants and that the other Defendants were briefed about the plan to arrest Barasky. (Doc. 90-5, at 28-29). Dent's motion for summary judgment is premature because whether Dent acted objectively reasonably and violated Barasky's clearly established Fourth Amendment rights turns on questions of fact regarding probable cause and Sumpter's reliability. (Doc. 87). Similarly, Havens, Bell, Gardner, and Hope's motions are premature because they turn on those same questions and questions about their knowledge of Sumpter's reliability. (Doc. 86; Doc. 87; Doc. 88). These

questions of fact prevent the Court from assessing the issue of qualified immunity at this stage. *See Curley*, 298 F.3d at 278 (declining to determine qualified immunity at the summary judgment stage because of outstanding disputes of material fact); *see Leschinsky*, 2025 WL 935958, at *5 (same); *see also Hindman*, 2024 WL 4198152, at *7 (same); *Contreras*, 2020 WL 2193429, at *9 (same). Accordingly, Defendants' motions for summary judgment on the basis of qualified immunity are **DENIED without prejudice**. (Doc. 86; Doc. 87; Doc. 88).

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motions for summary judgment are **DENIED**. (Doc. 86; Doc. 87; Doc. 88). Defendants' motions are **DENIED without prejudice** regarding the issue of qualified immunity. (Doc. 86; Doc. 87; Doc. 88).

Barasky's motion for summary judgment is **GRANTED in part** and **DENIED in part**. (Doc. 89). Barasky's motion is **GRANTED** to the extent Barasky seeks summary judgment on the following issues: 1) "[Barasky] was arrested by Defendants," 2) "Dent initiated criminal proceedings against [Barasky]," 3) "[t]he criminal proceedings initiated by [Dent] terminated in [Barasky's] favor," 4) "Defendants were police officers," and 5) Defendants "are persons and were acting under color of law within the meaning of [Section 1983]." (Doc. 89, at 2-3). Barasky's motion is **DENIED** to the extent he is seeking summary judgment on all other grounds. (Doc. 89, at 2-3).

An appropriate Order follows.

Dated: December 18, 2025

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**